347 So.2d 1290 (1977)
Allie BREAUX and Rita Breaux
v.
LOUISIANA DEPARTMENT OF HIGHWAYS, an Agent of the State of Louisiana, and Southern Farm Bureau Casualty Insurance Company, et al.
No. 11346.
Court of Appeal of Louisiana, First Circuit.
June 13, 1977.
Rehearing Denied July 11, 1977.
*1291 William C. Dupont, Dupont, Dupont & Dupont, Plaquemine, for plaintiffs, appellees.
William J. Doran, Jr., Baton Rouge, for defendant, appellant, Louisiana Dept. of Highways.
Robert J. Vandaworker, Baton Rouge, for defendant, appellees, Southern Farm Bureau Casualty Ins. Co.
William N. Faller, Baton Rouge, for third party, appellees, Dixie Sales & Service, Inc.
Joseph W. Rausch, Dermot S. McGlinchey, New Orleans, for defendant, appellee, appellant, Chrysler Corp.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
LOTTINGER, Judge.
This is an action ex delicto arising out of a one car collision filed by Allie Breaux and wife, Rita, against the Louisiana Department of Highways, Southern Farm Bureau Casualty Insurance Company (Southern Farm), liability insurer of Fabien Callegan, the owner of the vehicle being operated by Mrs. Rita Breaux, Dixie Sales & Service, Inc. (Dixie) and Chrysler Corporation (Chrysler). Southern Farm third partied Dixie and Chrysler as well as filing an intervention for the amount of the medicals paid under its policy. A third party demand was also filed by the Department of Highways against Chrysler.
A separate suit was filed by Southern Farm against the Department of Highways, Chrysler and Dixie for the amount of the property damages paid under its policy to Callegan. Both suits were consolidated for purposes of trial and appeal, and will be handled in this opinion, however, separate judgments will be rendered.
In the Breaux suit, the trial court awarded judgment in favor of Allie Breaux and against Chrysler and the Department of Highways, in solido, for the payment of the past medical expenses in the amount of $12,671.89; in favor of the intervenor, Southern Farm and against Chrysler and the Department of Highways, in solido, for $2,000.00; in favor of Allie Breaux and *1292 against Chrysler and the Department of Highways, in solido, in the amount of $15,000.00 for the loss of the services of his wife, Rita Breaux; in favor of Allie Breaux and against Chrysler and the Department of Highways, in solido, in the amount of $9,000.00 for future medical expenses; in favor of Mrs. Rita Breaux and against Chrysler and the Department of Highways, in solido, in the amount of $100,000.00, general damages; plus interest, costs, and expert witness fees.
In the Southern Farm suit, judgment was rendered in favor of Southern Farm and against Chrysler and the Department of Highways, in solido, for the amount of $3,145.00 with interest, and costs.
From both judgments the Department of Highways and Chrysler have taken suspensive appeals, and Allie Breaux and wife, Rita, have answered the appeals seeking an increase in quantum.
These consolidated cases were tried without a jury, and though the Trial Judge did not file written reasons for judgment, the record points out that on July 1, 1974, at approximately 7:45 A.M., Mrs. Rita Breaux was driving a 1973 Dodge Polara automobile owned by her brother-in-law, Fabien Callegan, along Louisiana Highway 404 in Iberville Parish when she struck a pothole in the roadway causing her to lose control of the vehicle, running off the road and striking head-on a large tree. After the accident it was discovered that the rear axle as well as the housing were broken.
Dr. Wylie Poole, an expert in mechanical engineering, who had designed axles and housings for motor vehicles, testified after examining the axle and housing that there was conclusive proof that the axle tube had not been assembled to specifications. He found that the male portion of the axle tube was not inserted the required depth into the female portion of the housing, thus causing a greater stress on the metal. He further concluded that the vehicle left the factory with a basically good design, but it was not properly assembled, and that the only way this housing could break under normal use would be because of some defect in the metal. He testified that if a vehicle with a cracked differential housing were to encounter an unusually big bump in the road, this would likely precipitate the remaining cracking and fracture of the differential housing. This could make it difficult to steer the car and probably attributed to Mrs. Breaux losing control. He lastly concluded that he found no evidence to show that the vehicle had been misused or put through any abnormal conditions.
Dr. Gary A. Paulson, the only metallurgist to testify, ran extensive tests and by the use of a scanning electron microscope found conclusive proof that a crack had existed in the axle housing for a substantial period of time prior to this accident, and that this crack was caused by metal fatigue. He concluded that the housing and axle tube left the factory defective, containing fatigued metal causing a crack to form either before plaintiff struck the hole, or at the time she struck the hole, and this caused the housing to break and the axle tube to come out of the housing.
Trooper James W. Major, the investigating officer, testified that the road conditions were very poor, containing many holes and ruts. He further stated that some of these holes were in such positions so as to make it almost impossible to see them until it was too late to avoid them. He concluded that Mrs. Breaux struck a hole approximately 6 to 8 inches or even 10 inches deep.
Mrs. Breaux testified she was traveling between 30 and 35 miles per hour, that she had dodged three holes before, and that as she came to a curve, she decided to get back into her own lane of travel when she hit the hole in question. She had been driving on the wrong side of the highway to avoid the holes. When she hit the hole, she heard a "big noise" and she could not control her automobile.
Earl Quatrevingt, maintenance superintendent with the Highway Department, testified that the roadway was one of the worst in the parish, and that they had been working on it for many months prior to the accident. He testified that there were no permanent signs on this highway warning *1293 the public of the conditions of the road and further testified that the deteriorated condition of the road is caused because of the fact that the road is built through a swamp area and the base of the road is continuously giving trouble.
In appealing, the Highway Department contends the Trial Judge erred (1) in finding the defect in the roadway was a proximate cause of the accident and that the Department had either actual or constructive knowledge of the defect; (2) in failing to find that the defective axle housing was an intervening proximate cause; (3) in failing to find that Mrs. Breaux was contributorily negligent; and (4) in awarding excessive damages. Southern Farm in appealing contends that the Trial Court erred (1) in finding Chrysler liable; (2) awarding damages to Mr. Breaux for the loss of services of his wife; and (3) in awarding an excessive amount of general damages including medical specials and expert witness fees.
It is generally accepted that "the Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The Department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the Department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it." Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3rd Cir. 1974), writ refused 303 So.2d 182 (La.1974).
Every case, however, must be decided on its own facts. The investigating officer who had traveled this road before testified that the road contained many holes and ruts, and that some were impossible to see until it was too late to avoid them. Seeing some holes too late places them in the category of a trap. Earl Quatrevingt, the maintenance superintendent, stated that the Department had been working on this road for some time, and that it was in bad shape, in fact, the worst in the parish.
Under the facts as obviously found by the Trial Court, the road was a hazard, and the Highway Department knew of its condition. Though repair work was being performed, obviously the hole in question was a defect. The Highway Department contends that the particular hole in question was caused by a heavy truck pushing out repair material from a preexisting hole, and that the Department would not have had sufficient time to relearn of this defect. However, the state trooper testified that it did not seem to him that this was a recent patch job that had been pushed out. We find no error in the ruling the Trial Court in finding the condition of the roadway was a hazard and the Department had either actual or constructive knowledge of it, and failed within a reasonable time to correct it.
As to the contention by the Highway Department that the Trial Court erred in failing to find Mrs. Breaux contributorily negligent, we disagree. From the facts found in the record, and under the circumstances, we feel as did the Trial Judge that Mrs. Breaux was not operating her vehicle in a negligent manner.
Chrysler in appealing on the question of its liability argues that the destruction of the rear axle assembly was a result of and not a cause of the accident and even if a cause, there is no proof that the defect is attributable to Chrysler. From the testimony of both Drs. Poole and Paulson, we believe the Trial Judge was correct in concluding that a defect existed in the axle housing when it left the Chrysler factory, and that this defect was a contributing cause in fact of the accident.
We do not find the defect in the automobile to be such an intervening cause so as to absolve the Department of Highways of liability. The Trial Judge was not in error in concluding that the force of the impact *1294 when the automobile hit the hole in question was sufficient to cause the failure to the weakened axle housing, thus causing Mrs. Breaux to lose control of the car.
The Trial Court awarded Allie Breaux $15,000.00 for the loss of services of his wife. This record is completely devoid of any evidence showing any loss of services except loss of consortium which is not recoverable in this state. Johnston v. Fidelity National Bank of Baton Rouge, 152 So.2d 327 (La.App. 1st Cir. 1963). Therefore, this portion of the Trial Court judgment is reversed.
Lastly, we come to the question of damages in general as well as medical expenses and expert witness fees. Except for an expert witness fee for a Dr. Fisher for testifying by deposition, where there is no deposition in the record, we find no abuse of discretion on the part of the Trial Judge in the fixing of expert witness fees.
It is argued by appellants that the Trial Judge allowed a medical bill for an operation to correct a fallen bladder when the operating surgeon testified that this condition was not connected with the accident. There was, however, a conflict in medical testimony as to whether this condition was or was not connected to the accident, and because of this, we do not find any error on the part of the Trial Judge.
As regards the general damages awarded Mrs. Breaux, the record discloses that she was taken from the scene of the accident to Rhodes Spedale General Hospital, in Plaquemines, Louisiana, in an unconscious condition. She had four major problems: a brain concussion, fracture of the neck of the left femur, fracture of the lower margin of the left femur and a fracture of the right wrist at the radius, in addition to lacerations and abrasions. X-rays were taken and she was administered IV's. She was operated on the same day at which time the lacerations were sutured, and a pin was placed in her hip. Again on July 17, 1974, she was operated on and an artificial prosthetic replacement of the neck and head of the femur, that is an artificial ball and socket joint of the hip, was done. A pin was placed in the distal area of the femur because of a comminuted compound fracture.
The fracture to her right wrist is what is called a Colles fracture, and she will have a deformity in her right wrist that will not be corrected. She was released on August 15, 1974, from the hospital, thus completing a six week stay.
In January of 1975, she was readmitted for eight days with a complaint of constant pelvic pain, urinary stress, and constant pelvic pressure. Again in July of 1975, she was admitted for three or four days with a complaint of swelling of the legs. Further, in January of 1976, she was again admitted for two weeks for a diabetes flare-up. Mrs. Breaux's disability has been rated at 100 percent in her right leg and 60 percent in her right arm and hand.
In arguing that the Trial Court abused its discretion in awarding Mrs. Breaux the sum of $100,000.00 for past, present and future pains suffering and disability, the defendants-appellants cite to this Court Hicks v. Phoenix Insurance Company, 220 So.2d 726 (La.App. 2nd Cir. 1969), writ refused (1969), whereas the plaintiff in answering the appeal and asking for an increase in quantum has cited Gordon v. General Motors Corporation, 323 So.2d 496 (La.App. 3rd Cir. 1975). We have studied both the cases cited, as well as reviewed completely in detail the medical testimony and exhibits in the record, and must conclude that the Trial Judge has not abused his discretion in the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Therefore, for the above and foregoing reasons the judgment of the Trial Court insofar as it awarded to Allie Breaux the sum of $15,000.00 for loss of services of his wife, and the fixing of an expert witness fee for and on behalf of Dr. Fisher in the amount of $60.00 is reversed, in all other respects the judgment of the Trial Court is affirmed. All costs of this appeal are to be paid by defendants-appellants.
REVERSED IN PART AND AFFIRMED.