ELLIS, Judge:
These two consolidated cases arise out of an automobile accident between an automobile owned and operated by Patricia Adams Ganier, now Bergeron, and an automobile owned and operated by Leonard L. Landry. Mrs. Audrey Trahan Adams, mother of Mrs. Bergeron, who was a guest passenger in her vehicle, died as a result of injuries received in the accident, and Mrs. Bergeron was seriously injured. The accident happened at the intersection of State Highway 3107 and the West Thibodaux Bypass, a parish road.
Plaintiffs in the first suit are the husband and all of the children of Mrs. Adams, except for Mrs. Bergeron, seeking damages for her wrongful death, as well as for Mrs. Adams’ pain and suffering prior thereto. Mrs. Bergeron is plaintiff in the other suit, seeking damages for her personal injuries, as well as for the wrongful death and pain and suffering of Mrs. Adams. The defendant in both suits is the State of Louisiana, through the Department of Highways.
The State answered, denying any negligence on its part, and alleging the negligence of both Mr. Landry and Mrs. Berger-on as the cause of the accident. It also third partied the Lafourche Parish Police Jury, alleging that the Police Jury was responsible for regulating traffic on parish roads, and asking for indemnification or contribution in the event the State should be found liable. It is further alleged that plaintiffs have settled all claims with Mr. Landry, and that any judgment rendered against the State should be reduced proportionately.
The Police Jury answered, denying liability, and pleading the negligence of Mr. Landry and Mrs. Bergeron. It third partied United States Fire Insurance Company, alleging that United was its insurer, and asking for judgment for any amount it might be condemned to pay. United answered, denying that it insured the Police Jury, and alternatively alleging the negligence of Mr. Landry and Mrs. Bergeron.
Subsequently the State third partied Mrs. Bergeron, asking for contribution, and the Police Jury reconvened against the State, asking for indemnification. United then third partied Mrs. Bergeron and the State. Finally, the Police Jury third partied Mrs. Bergeron.
After trial on the merits, judgment was rendered in favor of plaintiffs and against the State, and all third party demands were dismissed. From that judgment, the State has appealed. Answers to the appeal were filed by Mrs. Bergeron, seeking certain stipulated medical expenses; and by the Police Jury and United, seeking to preserve their third party demands, should the judgment in their favor be reversed.
At the intersection, Highway 3107, an 18- or 20-foot wide blacktop road, runs east and. west, and the West Thibodaux Bypass, a 25-foot wide blacktop road, runs north and south. Traffic surveys show that Highway 3107 is the more heavily traveled. At the time of the accident, traffic approaching the intersection on the Bypass was faced *683 with two “Stop Ahead” signs, located 750 to 1,000 feet from the intersection, and a standard 30-inch stop sign at the intersection itself. Highway 3107, the favored road, had no traffic controls other than a warning sign indicating an intersection ahead. Both drivers testified that they were familiar with the intersection. Mr. Landry stated that he had been through the intersection, on the Bypass some 15 times before the accident, and had always observed and obeyed the stop sign.
On the date of the accident, Mr. Landry was driving north on the Bypass and Mrs. Bergeron was going east on Highway 3107, approaching the intersection at the same time. On this occasion, Mr. Landry did not observe or obey the stop sign, drove into the intersection and the two vehicles collided.
Plaintiffs claim that the State is liable to them because of its alleged failure to place adequate traffic controls at the intersection, rendering it unsafe for reasonably careful drivers using Highway 3107.
The record reveals that the Bypass, also known as Julia Road, had been upgraded from a gravel road to a 25-foot blacktop road during 1971, 1972 and 1973, the improvement having been completed on about July 1, 1973. At that time, the traffic controls on the Bypass consisted of a red “Stop Ahead” sign some distance before the intersection and a standard 30-inch Stop sign at the intersection. There were no controls on Highway 3107. The record further shows that between January 1, 1971, and September 1, 1973, nine accidents took place at the intersection, in each of which one of the parties ran a stop sign. These accidents took place on November 28, 1971; October 18, November 14, and December 27, 1972; and January 7, January 23, February 27, July 9 and August 22, 1973.
On August 23,1973, the Lafourche Parish Police Jury requested that the State make a survey at the intersection, and “do whatever is necessary to make this a safer intersection.” On September 28, 1973, a traffic survey was made, and as a result thereof the following recommendations were made:
“It is recommended that the Department install 20-inch wide stop lines on both approaches of the West Thibodaux Bypass Road and replace the substandard 24-inch “Stop” signs with 30-inch “Stop” signs. In addition to this, it is recommended that the Department install crossroad warning signs on both approaches of La 3107 (see attached sketch).”
On November 6 and 7, 1973, the recommendations were carried out. The 24-inch signs referred to were found to be standard 30-inch signs, and were not replaced. The crossroad warning signs were installed, and, because they were shown on the sketch which accompanied the order, “Stop Ahead” signs were installed about 1,000 feet from the intersection on the Bypass. The “Stop Ahead” signs already installed by the Police Jury were left in place. The stop bars, which are white stripes on the road surface indicating where a vehicle stopping for the sign should come to a halt, were placed on the Bypass.
Although plaintiffs argue to the contrary, there is no credible evidence in the record to show that there were any accidents at the intersection after August 22, 1973, until June 14, 1973. The accident in this case happened on June 23, 1973.
The main thrust of plaintiffs’ argument is that the action taken by the State on November 6, 1973, was not enough to protect vehicles traveling on Highway 3107. Both by expert testimony and by reference to the Traffic Control Devices Manual of the Department of Highways, they argue that the control that should have been installed was a “Four Way Stop”, which would require all vehicles on both roads to stop before entering the intersection.
Section 2B-6 of the Manual, entitled “Multiway Stop Signs”, provides:
“Any of the following conditions may warrant a multiway STOP sign installation (sec. 2B-4):
[[Image here]]
“2. An accident problem, as indicated by five or more reported accidents of a type susceptible of correction by a multiway *684 stop installation in a 12-month period. Such accidents include right- and left-turn collisions as well as right-angle collisions.”
It is pointed out that, in the 12-month period immediately before the survey, seven accidents took place at the intersection.
The State argues that a four-way stop was not indicated because of the low volume of traffic at the intersection, and because most of the accidents took place during the construction period and could not be necessarily considered as indicating that the intersection was hazardous. They point out that for one month before the survey and for almost nine months thereafter, and for over seven months after the new traffic controls were installed on November 6, 1973, there were no accidents whatsoever at the intersection.
Plaintiffs’ traffic expert testified that the minimum control which he would have recommended at this intersection on September 28,1973, would be “standard Stop signs on all approaches and proper notice given to the motorist in effect with Stop Ahead signs.” He further stated: “This would not necessarily stop the violation rate or lower the violation rate on Julia Road, but the probability of a simultaneous violation on the two roadways would be much more remote.” He based his opinion on the information available to the State on September 28, 1973. On the other hand, when asked a hypothetical question, based on the facts of the case as above stated, as to the adequacy of the controls installed in November, 1973, in view of the fact that there were no accidents for seven months thereafter, he stated that, under the facts given, he would assume that the controls were functioning adequately.
The trial judge found that the State failed in its duty to warn travelers on Highway 3107 of a hazardous condition at its intersection with the Bypass, and was therefore liable for the injuries suffered by Mrs. Adams and Mrs. Bergeron. Apparently he was of the opinion that Mr. Landry was also negligent, since he reduced the award against the State by one-half. The judge found no negligence or contributory negligence on the part of Mrs. Bergeron.
It is obvious that Mr. Landry was negligent. He failed to observe and obey a stop sign of which he was aware, and which he had observed and obeyed on many prior occasions. His negligence is certainly the proximate cause of the accident.
As to the alleged negligence of the State, we note the following principles of law, on which the trial judge properly relied:
“It is generally accepted that ‘the Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The Department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the Department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it.’ Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3rd Cir. 1974), writ refused 303 So.2d 182 (La.1974).” Breaux v. Louisiana Department of Highways, 347 So.2d 1290, 1293 (La.App. 1st Cir. 1977).
We note that the State was notified of the existence of the alleged hazardous condition by the August 23, 1973, resolution of the Police Jury, and that it conducted a study and made certain changes in the traffic controls at the intersection. Thereafter, there were no accidents at the intersection for over seven months, and only two during the next year.
Under those circumstances, we find that the State has met the duty imposed on it by the law. We think that the evidence of what actually happened at the intersection after the additional controls were put in *685 place far outweighs the opinion of plaintiffs’ expert. We further note that the trial judge stated in his reasons for judgment that there had been eight accidents at the intersection in the eight months preceding the accident. The record clearly shows that there was only one accident, and his conclusion in that respect is manifestly erroneous. We therefore hold that the sole proximate cause of the accident was the negligence of Mr. Landry in the respects hereinabove set forth.
Since we are of the opinion that the State was not guilty of negligence which was a cause in fact of this accident, we need not consider the questions raised by the various third party demands.
The judgment appealed from is reversed and set aside, and there will be judgment in favor of the State, dismissing plaintiffs’ demands at their cost and dismissing all third party demands.
REVERSED AND RENDERED.