416 So.2d 368 (1982)
Edward HESSIFER
v.
SOUTHERN EQUIPMENT, INC., et al.
No. 14469.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
*369 David Robinson, Baton Rouge, for plaintiff.
Warren L. Mengis and Owen Goudelocke, Baton Rouge, for defendants.
Before ELLIS, COVINGTON, LOTTINGER, CHIASSON, EDWARDS, LEAR, COLE, WATKINS, SHORTESS, CARTER and SAVOIE, JJ.
COLE, Judge.
The issue before us is the extent of the Department of Transportation and Development's duty to maintain reasonably safe highways.
This suit was instituted by Edward Hessifer against Southern Equipment, Inc., and Charles A. Williamson for injuries sustained by Edward Hessifer's brother, Howard M. Hessifer. Howard Hessifer sustained the injuries when a pickup truck driven by him collided with a loaded trailer which became detached from a "stake-bodied" truck driven by Williamson. The stake-bodied truck was owned by Southern Equipment, Inc., Williamson's employer.
Thereafter, an amended petition was filed to declare petitioner, Edward Hessifer, was curator of the interdict, Howard M. Hessifer. Amending petitions were also filed which named these additional defendants: Zurich Insurance Company; Mission *370 Insurance Company; Dominic S. Bonfanti; Ideal Manufacturing Company; Fulton Manufacturing Company; Dutton Lainson Company, Manufacturing Division; and the State of Louisiana through the Department of Transportation and Development.
Prior to trial, Ideal Manufacturing Company was dismissed as of nonsuit. By stipulation entered into at the trial, all other defendants with the exception of the State of Louisiana were dismissed. It was stipulated, however, that should the court find actionable negligence on the part of Southern Equipment, Williamson, Dominic S. Bonfanti d/b/a Bic Trailer Sales, or Dutton Lainson Company, the court would reduce the amount of any award against the State of Louisiana. The reduction would account for the virile share of the released tortfeasor or tortfeasors.
The accident occurred October 30, 1978 on U. S. Highway 61 near a bridge across Bayou Baton Rouge in East Baton Rouge Parish. Howard M. Hessifer was proceeding south and Williamson north when the trailer attached to the truck driven by Williamson became detached and entered the southbound lane of traffic. At this point the highway consisted of one northbound lane and one southbound lane. The trailer struck Hessifer's pickup truck head-on. Hessifer was severely injured, and he remained in danger of death for some time. Eventually he recovered partially, but sustained serious and irreversible brain damage as a result of which his intelligence was reduced to that of a four to six year old child.
The trial court found negligent the State of Louisiana, Southern Equipment, Williamson, Bonfanti (the seller of the trailer latch) and Dutton Lainson (the manufacturer of the trailer latch). It awarded judgment against the State for its virile share of the total sum of $2,744,059.53. The State has appealed, and plaintiff answered the appeal. Plaintiff seeks an increase of the judgment awarded on the basis that neither Bonfanti nor Dutton Lainson were joint tortfeasors with the State, thus eliminating a deduction for their virile shares.
We reverse, and since we hold the State of Louisiana is not liable, we need not address the question of whether or not Bonfanti and Dutton Lainson were joint tortfeasors.
Approximately three weeks before the accident occurred, Williamson, a truck driver, had gone next door to Bic Trailer Sales which was owned and operated by Bonfanti. There, he purchased a Dutton Lainson latch kit to replace a defective latch on the trailer involved. Bic was a wholesale business which assembled and sold boat trailers, miscellaneous related parts, and supplies to dealers. The coupler and ball on the stake-bodied truck were made by Ideal. They were incompatible with the Dutton Lainson latch so that the combination would hold a load of only approximately 2,500 pounds, while a proper combination should have held a load of approximately 5,000 pounds. The truck and trailer were used to haul a load to St. Gabriel some days before the accident.
On the day of the accident, safety chains were not connected between the trailer and the truck. Instead, Williamson wrapped a welding rod and some wire around the trailer hitch to prevent the latch from coming up. Professor Andrew J. McPhate, an expert in mechanical engineering, testified at trial the chains would have prevented the trailer from coming loose had they been properly fastened. Williamson testified his supervisor, Robert Carroll, was aware that he had been unable to attach the safety chains, but told him to make his delivery without the safety chains. Williamson left Southern Equipment's place of business in Baton Rouge to deliver an air conditioning compressor to Natchez, Mississippi. The compressor was loaded onto the trailer, which in turn, was pulled by the truck. The truck and trailer crossed several railroad tracks which were moderately rough, so that cars slowed down in crossing those tracks, without incident.
The bridge near the scene of the accident is relatively short. One going north crosses the bridge onto an approach which extends a distance of eighteen feet. At the time of *371 the accident the north end of the approach was connected with the main portion of the highway by a band of asphalt which constituted a "bump." The band of asphalt was about 3 to 3½ inches high and rose at an angle of at least 45° from the approach pavement to the highway pavement. The approach itself dips as one travels northward from the end of the bridge to the main portion of the highway.
Williamson testified he became aware the trailer was loose when he heard a noise as the truck encountered the bump. There was only one other witness to the accident other than Hessifer. Hessifer did not testify, apparently because of his physical and mental infirmities. Gary Schultz, who was driving immediately behind Williamson's truck, testified he saw the trailer come loose as it went into a dip. He said the trailer, without striking the pavement, then veered sharply into the southbound lane and struck Hessifer's pickup truck head-on. Williamson testified the trailer struck the pavement before proceeding into the other lane. We view the question of whether or not the trailer struck the pavement at any time as being of no moment. The different versions of what transpired in that regard can be explained by the common phenomenon that witnesses give varying impressions of an exciting or tragic event. As to when the trailer came loose, we think the versions present no real conflict. The approach with the "dip" is only 18 feet long. As the truck encountered the "bump," the trailer would still be in the "dip." Thus, the accident, we find, took place more or less simultaneously with the vehicle's striking the bump.
Professor McPhate testified the combination of the dip and the bump could easily cause a defective latch to come loose. He explained the truck and ball on the coupler would first drop when they encountered the approach, then rise when they encountered the bump, then drop again when the force of gravity brought the truck down. In the process, McPhate opined, the trailer came loose. We thus find the presence of the bump was a contributory factor in the trailer coming loose and hence in the accident's occurrence.
The trailer hitch, as we have stated, was incompatible with the latch, and the safety chains were negligently left unattached. Professor McPhate's testimony leaves no doubt but that these factors were causes of the accident. Three witnesses, employees and former employees of the State, Bezard, Morales, and Stein, testified a three inch bump constituted a hazard, which could cause an accident. This is consistent with McPhate's opinion that the accident resulted in part from the presence of the bump. Thus, there were two causes of the accident, the condition of the highway and the use of an improper and insufficient attachment of the trailer to the stake-bodied truck.
Plaintiff contends the Department of Transportation and Development should be held liable either through a theory of negligence under La.Civ.Code art. 2315 or through concepts of strict liability under La.Civ.Code art. 2317, as enunciated in Loescher v. Parr, 324 So.2d 441 (La.1975). In Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), the Louisiana Supreme Court noted the distinction between negligence cases and strict liability cases has been largely misunderstood. In reviewing the distinguishing effect of applying strict liability under La.Civ.Code art. 2317, the Supreme Court stated:
"In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless *372 failed to discover that the thing presented an unreasonable risk or harm. (Emphasis by the court.)
"In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective). The resulting liability is strict in the sense that the owner's duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which usually gives rise to a duty under negligence concepts. Under strict liability concepts, the mere fact of the owner's relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody. If the owner breaches that absolute duty to discover, he is presumed to have discovered any risks presented by the thing in custody, and the owner accordingly will be held liable for failing to take steps to prevent injury resulting because the thing in his custody presented an unreasonable risk of injury to another. (Emphasis by the court.)
"Thus, while the basis for determining the existence of the duty (to take reasonable steps to prevent injury as a result of the thing's presenting an unreasonable risk of harm) is different in C.C. Art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same. The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends upon the particular facts and circumstances of each case." (Emphasis added.)
Under this analysis, a duty-risk approach is necessary to determine whether the defendant acted unreasonably in failing to protect against the particular consequences which resulted. If the defendant is under no duty to protect the plaintiff against the particular risk which harmed him, the defendant should not be legally responsible, even though the defendant has custody over the thing which has in fact been one of the causes of the plaintiff's injury. As stated by Professor Wex S. Malone,
"... a thing is not to be condemned as defective solely by reason of the fact that it gave rise to an injury on the particular occasion in question. If the mere existence of a causal relation between an act of a thing and the injury complained of were regarded as sufficient to entail liability on the part of the guardian, ... the qualifying term `defective' would be deprived entirely of all significance." Malone, Ruminations on Liability for the Acts of Things, 42 La.L.Rev. 979, 999 (1982).
In contrast, Louisiana courts have imposed absolute liability for ultrahazardous activities, and the injured party recovers simply by proving damage and causation, even when there is no substandard conduct on anyone's part. Yet, even when one undertakes an ultrahazardous activity, he only assumes responsibility for all anticipated and natural consequences of the performance of that activity. Holland v. Keaveney, 306 So.2d 838 (La.App. 4th Cir. 1975), writ refused 310 So.2d 843 (La.1975).
Thus, the real issue is the extent of the Department's obligation. Did the Department's obligation to maintain reasonably safe highways include a duty to protect the plaintiff against the risk created by another motorist's improperly attached trailer? In Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3d Cir. 1974), writ refused 303 So.2d 182 (La.1974), the court stated (at page 583):
"The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highway. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising *373 ordinary care and reasonable prudence."
The duty of the Department under traditional negligence theory clearly did not include an obligation to protect against harm which would not have resulted but for the grossly negligent operation of the truck and trailer. The application of strict liability principles under Civil Code article 2317 to public entities in Jones v. The City of Baton Rouge, etc., 388 So.2d 737 (La.1980), did not change this duty; it only relieves the plaintiff of the burden of proving the Department's actual or constructive knowledge of an unreasonably dangerous situation which it failed to correct. Since the Department had no duty to protect plaintiff from the grossly negligent acts of Williamson and Southern Equipment, it was simply not at fault and is not legally responsible under either article 2315 or article 2317 of the Civil Code.
Even if we were to find such a duty to make the highways safe against vehicles being operated in such an extraordinarily negligent manner, the jurisprudence of this state precludes a finding of liability on the basis of negligence theory. The acts of negligence in using an improper latch and in failing to secure the safety chains were intervening and superseding causes of the accident, precluding liability on the part of the State. Our recent decision on rehearing in Mizell v. State, through La. Dept. of Hwys., 398 So.2d 1136 (La.App. 1st Cir. 1980), sets out the jurisprudence on intervening cause. When an accident results from two acts of negligence, one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the part of the one responsible for the more remote cause.
Likewise, even if the Department had been at "fault" under the strict liability concepts of article 2317, recovery against the Department would still be defeated by the third party fault defense.
In American Road Ins. Co. v. Montgomery, 354 So.2d 656 (La.App. 1st Cir. 1977), writ refused, 356 So.2d 430 (La.1978), we held the fault of a third person need only be a substantial cause, rather than the sole cause of the victim's injury for the owner of the thing to be absolved from liability. However, the Louisiana Supreme Court, in Olsen v. Shell Oil Co., 365 So.2d 1285 (La. 1979), stated (at page 1293): "[T]he fault of a `third person' which exonerates a person from his own obligation importing strict liability as imposed by Articles 2317, 2321, and 2322 is that which is the sole cause of the damage."
We believe the "sole cause" to which the Supreme Court refers in Olsen is the sole "legal" cause or "responsible" cause, as distinguished from a "cause-in-fact" such as the bump constitutes in the instant case. Indeed, we say this because of a footnote in the Olsen case which states in part that "[T]he owner or custodian of a defective building, thing, or animal is not relieved of his responsibility and strict liability to a victim injured thereby by the circumstance that the fault or negligence of a third person contributed to the injury, unless the intervening third person's act or fault is in the nature of a superceding cause in Anglo-American tort law." 365 So.2d at 1293, n. 15. Thus, when "substantial cause," as found in American Road, is viewed in the same context as "legal" cause or "superceding" cause, the semantical conflict between American Road and Olsen is resolved. Otherwise, one might view American Road as being implicitly overruled by Olsen.
We have reviewed carefully the Third Circuit's decision in Godwin v. Government Emp. Ins. Co., La.App., 394 So.2d 751, decided in 1981, which thoroughly considered the reasoning in American Road and arrived at an apparent different result. In the Godwin case, the court found there were two factors which substantially contributed to the automobile accident in which the driver of the automobile, Mrs. Godwin, and her son were injured. The first factor was the failure of the DOTD to correct an elevational difference between the paved surface of the highway and its shoulders. The second factor was the negligence of Mrs. Godwin after driving onto the road's shoulder in attempting to return to the pavement at too *374 great an angle, failing to reduce significantly the speed of her automobile, and oversteering to the left. The Godwin court refused to hold that young Godwin's recovery against the Department was defeated by his mother's negligence. Instead, the court concluded that where fault is established under article 2317, responsibility to a totally innocent victim can be avoided only by proof that the harm was caused by the sole fault of a third party or by an irresistible force. The Third Circuit reached this decision because it believed that both the defect in the highway and the negligence of Mrs. Godwin contributed substantially to the injuries suffered by the innocent guest passenger. The court stated (at page 759):
"Under such circumstances we can conceive of no valid reason why the Department should be completely absolved of all responsibility for its concurrent fault. We have previously held in this case that the Department is liable to Kevin Godwin, under the provisions of Article 2315, for allowing a patently dangerous highway condition, of which it had notice, to exist. Under such circumstances, it matters not that the accident and resultant injuries to Kevin were also caused by the concurrent negligence of Mrs. Godwin, for it is well settled that joint tortfeasors are solidarily liable for damages which result from their concurrent negligence or wrongdoing. It would be clearly incongruous to hold that a joint tortfeasor is solidarily liable if his responsibility attaches under Article 2315 but totally relieved of responsibility if he is concurrently at fault by application of the legal principles set forth in Article 2317." (Citations omitted and emphasis added.)
Though the Godwin result seems justified in instances of true concurrent fault, the reasoning of the Godwin case is totally inapplicable when applied to the facts of the instant case. Unlike in Godwin, where the Department was held to be negligent and liable under Civil Code article 2315, we have already concluded that Williamson's acts of negligence, imputable to Southern Equipment, were intervening and superceding causes of the accident, precluding liability on the part of the State under article 2315. Since the State and Southern Equipment are not joint tortfeasors, the incongruous result foreseen by the Godwin court does not follow the application of the third party fault defense in this case. Thus, because the fault of Williamson superceded any fault on the part of the Department, the fault of Williamson is the sole legal cause of plaintiff's damage.
For these reasons, the judgment of the trial court is reversed. Plaintiff-appellee is to pay all costs.
REVERSED.
COVINGTON, J., concurs in result.
SHORTESS, J., concurs with reasons.
WATKINS, J., dissents and assigns reasons.
ELLIS, SAVOIE and CARTER, JJ., dissent for reasons assigned by WATKINS, J.
SHORTESS, Judge, concurring.
I concur.
You can apply a duty-risk analysis with the Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), "but for" test for negligence. You can apply a Civil Code Art. 2317 strict liability analysis. You can apply a proximate cause analysis. The conclusion I reach is the same. The State should not be liable because this accident would not have occurred had it not been for the grossly negligent operation of this truck and trailer.
WATKINS, Judge, dissenting.
Although the majority finds that the condition of the highway (the combination "dip and bump") was a cause of the accident resulting in plaintiff's injuries, they conclude after using the duty-risk analysis that the Department of Transportation and Development (DOTD) of the State of Louisiana was under no duty to protect the plaintiff motorist against this particular risk because it was also caused by another motorist with an improperly attached trailer. In effect, the majority finds the negligence of *375 the truck driver, Williamson, to have been the more substantial cause of the accident, and the condition of the highway a relatively insubstantial cause. The majority evidently concludes that the "dip and bump", although a cause in fact of the accident was not a defect in the highway since it did not present an unreasonable risk of harm to the plaintiff motorist-victim, who was completely free of fault.
The majority declares that "the issue before us is the extent of the DOTD's duty to maintain reasonably safe highways." Later in the opinion it is again stated, "Thus, the real issue is the extent of the DOTD's obligation." Then the conclusion is reached that the duty of the DOTD did not include an obligation to protect the innocent plaintiff motorist-victim "against harm which would not have resulted but for the grossly negligent operation of the truck and trailer." Yet, the same majority also finds that but for the condition of the highway (the dip and bump) this accident would not have happened.
The majority opinion conspicuously fails to discuss the essential question as to whether or not the combination of the "dip and bump" was a defect in the highway. Or, to state the question another way, did plaintiff prove that the condition of the highway presented an unreasonable risk of harm to him. The opinion does intimate, however, that the probability of a vehicle with a defective trailer hitch (such as the truck with trailer the defendant Williamson was driving) being driven over the "dip and bump" on U. S. Highway 61 was so unlikely or remote that it would not be reasonable to require the DOTD to anticipate it taking place and, therefore, to protect other users of the highway against the harm to them that would ensue.
I submit that the evidence in this case clearly establishes that the "dip and bump" created an unreasonable risk of harm to others and was, therefore, a defect in the highway. I believe that the DOTD was negligent in its failure to repair this condition known to constitute a hazard. There is ample evidence in the record of almost daily use of the highway by DOTD and other state personnel who either did or should have reported this hazardous condition at that point in the highway. Since the DOTD either knew or should have known of this hazardous condition, it is liable under LSA-C.C. art. 2315.
The negligence of the defendant Williamson was not, in my opinion, an intervening or superseding cause precluding a finding of liability on the basis of the negligence of the DOTD. The presence of the "dip and bump", the persistent failure to perform what would have been a routine repair job, and the failure to at least sign or post this hazardous condition, were continuing acts of negligence and/or breaches of duty to the user-motorists which were not superseded by the obvious negligence of Williamson. As stated by the majority, "there were two causes of the accident, the condition of the highway and the use of an improper and insufficient attachment of the trailer to the stake-bodied truck." This accident was caused by the concurrent and combined negligence of Williamson and the DOTD. I hope it's not an anachronism to state that the negligence of the DOTD was clearly a proximate cause of this accident. Mizell v. State, through La. Dept. of Highways, 398 So.2d 1136 (La.App. 1st Cir. 1980), and the cases cited therein deal with remote and significant intervening causal circumstances and are inapplicable.
As stated above, the evidence in this case clearly establishes that the "dip and bump" created an unreasonable risk of harm to others and was, therefore, a defect in the highway.
LSA-C.C. art. 2317 imposes liability on the custodian of a defective thing which creates an unreasonable risk of harm to others. What are the criteria for determining reasonableness under these circumstances? In Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980), the Supreme Court states at page 588:
"Although `unreasonableness' is a traditional standard for the determination of negligence, it is also fundamental to a finding of strict liability under LSA-C.C. *376 art. 2317. In both negligence and strict liability cases, the probability and magnitude of the risk are to be balanced against the utility of the thing. The distinction between the two theories of recovery lies in the fact that the inability of a defendant to know or prevent the risk is not a defense in a strict liability case but precludes a finding of negligence."
We are required, therefore, to balance the probability and magnitude of the risk against the utility of this highway. Since the use of this highway (U. S. 61) in this geographical location is practically indispensable, it would seem to follow that the utility of this thing must be given an extremely high value in this balancing test. On the other side of the scale the damages sustained by the plaintiff clearly establish the magnitude of the risk involved. In regard to the probability of the risk of an accident such as the one that happened in this case (or any other accident that may have been caused by this "dip and bump") the record is devoid of evidence that could be used to determine probabilities, such as the traffic count, the length of time that this condition existed, the number of other accidents reported, if any, etc. As a result, probabilities simply cannot be determined from this record. The record does show that the "dip and bump" could have been corrected or repaired by overlaying with asphalt and leveling the area, and indicates clearly that this was a relatively simple operation which could have been performed by one of the DOTD's maintenance crews in a routine manner on very short notice. At the very least, the DOTD could have warned motorists of this condition with a sign. Conceding the critical need for this highway, but considering the ease with which this "dip and bump" could have been repaired with very little disruption in the use of the highway, I can only conclude that the State was not justified in exposing the motoring public to the magnitude of this risk, however improbable. Since the DOTD was not confronted with a situation where it was limited to the sole alternative of closing the highway to the public (or closing it even for an extended period of time for repairs), or having the public assume the risk of this type of accident, the utility of the thing in this application of the test is far outweighed by the magnitude of the risk. The DOTD could have eliminated the risk from this "dip and bump" with a relatively simple repair job.
In further support of the finding that the "dip and bump" created an unreasonable risk of injury, I am unable to conclude that the risk was not unreasonable in light of the testimony of the three DOTD employees. The evidence clearly established that the bump was 3 to 3½ inches in elevation, and each of the DOTD's employees testified that he would consider a bump of this size to be hazardous and would require immediate attention. In view of the testimony of the DOTD's three engineer-supervisors who testified that a 3 to 3½ inch bump was hazardous and, therefore, dangerous, I cannot understand how the majority can find that it did not pose an unreasonable risk of injury to persons using this highway.
The majority appears to be of the opinion that under American Road Ins. Co. v. Montgomery, 354 So.2d 656 (La.App. 1st Cir. 1977), writ refused 356 So.2d 430 (La.1978), and Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1979), the custodian of a defective thing is exonerated from liability if the fault of a third person is a "superseding" or "intervening" cause of the accident. As I have indicated above, I cannot agree with the majority's apparent overlooking of the possibility that an accident may have two or more concurrent causes, in law as well as in fact. That was clearly the case here. The accident was caused by the concurrent incidence of the two subsisting conditions, the defective trailer hitch and the "dip and bump" in the highway. Both conditions existed equally from the time the truck left Southern Equipment's place of business in Baton Rouge. Both caused the accident. Neither superseded the other as a cause, because each condition existed for a substantial period before the accident, and the two conditions combined to cause the accident. Did the defective trailer hitch alone act as legal cause of the accident? No, *377 because the DOTD could have corrected the condition or signed the area of the bump even after the defective trailer hitch was installed. Thus, it was the continuing negligence of the DOTD in not correcting the bump or taking other preventive action that caused the accident. Likewise, the defective trailer hitch could have been remedied. It was not. Thus, the defective trailer hitch was a cause of the accident. Thus, the accident had two concurrent causes, and neither may be disregarded in applying the law to the facts of the case. The fault of Southern Equipment's driver does not meet the requirement of the third party defense (under C.C. art. 2317 liability) of the DOTD because it is neither the "sole cause in fact" nor is it the "sole legal cause" of this accident.
As was properly the reasoning in Godwin v. Government Employees Ins. Co., 394 So.2d 751 (La.App. 3d Cir. 1981), it would be incongruous to permit solidary liability if there are joint tort feasors under LSA-C.C. art. 2315 and not to find there could be joint tort feasors in a situation in which one tort feasor was negligent (LSA-C.C. art. 2315) and the other tort feasor was the custodian of a defective thing (LSA-C.C. art. 2317). I agree with Godwin that not to permit recovery from a custodian of a defective thing in such a situation where the existence of the defect in the thing was a substantial cause of the accident is a violation of our state's system of permitting solidary liability of joint tort feasors for personal injury or property damage. The force of Godwin's reasoning cannot successfully be refuted.
For the foregoing reasons, I respectfully dissent.