GUIDRY, Judge.
This case arose out of a vehicular collision on Louisiana Highway 384 (Big Lake *431 Road) in Calcasieu Parish. The accident occurred when a trailer carrying an aluminum pontoon boat disengaged from its hauling vehicle and collided with a 1982 Pontiac Grand Prix. The driver of the Grand Prix, Louis E. Geisler, Jr., was killed in the accident.
Mr. and Mrs. Louis Geisler, Sr., parents of the decedent, filed this suit to recover damages for their son’s death against Roger J. Billedeaux, driver and co-owner of the 1979 Ford pickup truck from which the trailer and xboat disengaged; Curley Phail, co-owner of the aforementioned truck and owner of the pontoon boat and trailer involved in the accident; Allstate Insurance Company (Allstate), insurer of the pickup truck, boat and trailer; and, the Department of Transportation and Development (DOTD). DOTD filed a third party demand against Billedeaux, Phail and Allstate who in turn filed third party demands against DOTD. The Travelers Insurance Company (Travelers) intervened seeking reimbursement for worker’s compensation benefits paid to plaintiffs.
FACTS
The facts of the case are undisputed.
On Saturday, May 29, 1982, Billedeaux and Chester LeBlanc were traveling on Big Lake Road in a 1979 Ford pickup truck. They were returning to Lake Charles from Big Lake where they had picked up a trailer and aluminum pontoon boat owned by Curley Phail, Billedeaux’s father-in-law. While at Big Lake, Billedeaux and LeBlanc attached the boat trailer to the pickup truck by means of a valley hitch, whereby the cup on the trailer hitch is fitted securely over the ball on the truck’s rear bumper. The hitch was locked onto the ball by a latch. A bolt was placed through the latch to keep it securely in a locked position. The trailer did not have safety chains for attachment to the truck.
Billedeaux and LeBlanc had traveled about ten to fifteen miles from Big Lake when the accident occurred. Big Lake Road is a two lane highway divided by a yellow dashed line. Billedeaux’s truck was traveling north on Big Lake Road, while Geisler was driving a rented 1982 Pontiac Grand Prix south on Big Lake Road. Geis-ler, the driver, and his three passengers were en route to Grand Chenier. At approximately 1:50 p.m., Billedeaux’s truck struck a “bump” in the road located about 26 feet north of the intersection of Big Lake Road and Mark Road. The jolt from the bump caused the boat trailer to become disengaged from the truck. The trailer and boat then veered into the southbound lane of traffic where it struck the Grand Prix directly on the driver’s side. Geisler was killed instantly. The other three passengers in the vehicle received only minor injuries. This suit followed.
In written reasons for judgment, the trial court found the highway, at the point of accident, to be defective. The trial court further found the highway defect to be the sole cause of the accident. Accordingly, judgment was rendered in favor of Mr. and Mrs. Geisler and intervenor, Travelers, and against DOTD in the amount of $50,000, plus interest and costs. Of this amount, the sum of $45,987.27 was awarded to Travelers as subrogation for amounts previously paid to the Geislers. The trial court found Billedeaux and Phail to be free of any negligence.
Devolutive appeals were perfected in this case by the Geislers, DOTD and Travelers, however, DOTD is the only party which set forth and briefed specifications of error. For that reason, we need only deal with those errors assigned by DOTD.
DOTD assigns the following alleged errors for our consideration:
1. The trial court erred in finding DOTD liable in the instant case; and,
2. The trial court erred in failing to properly apply the doctrine of comparative negligence as to Billedeaux, Phail and Allstate; and, thus erred in failing to render judgment in favor of DOTD on its third party demand against them.
LIABILITY OF DOTD
DOTD asserts on appeal that the trial court erred in holding it liable for the acci *432 dent and resultant damages. In support of its position, DOTD principally relies on the case of Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir.1982), writ denied, 420 So.2d 982 (La.1982). Although there is some factual similarity between Hessifer and the instant case, DOTD’s reliance on Hessifer is misplaced.
In Hessifer, supra, Howard Hessifer sustained severe injuries when his vehicle was struck head-on by a loaded trailer which became detached from a truck driven by Charles Williamson. The Hessifer and Williamson vehicles were traveling in opposite directions. DOTD was made a defendant in the case on the basis that, just prior to the collision, Williamson’s truck struck a three to three and one-half inch “bump” on the highway which allegedly caused the trailer to become disengaged from the truck. The trial court found DOTD liable. Williamson was found solidarily liable because the trailer hitch latch was defective; Williamson was aware of the defect; and, the trailer was not secured to the truck by safety chains.[2]
The appellate court reversed the trial court’s finding of liability as to DOTD. In finding that Williamson was negligent in hauling a trailer with a defective latch and without using safety chains, the court concluded that DOTD’s obligation to maintain reasonably safe highways did not encompass the duty to protect a plaintiff against the risk created by another motorist hauling a trailer with a defective latch and without safety chains. The court found no such duty existed on the part of DOTD, and further stated that, had such a duty existed, “[t]he acts of negligence in using an improper latch and in failing to secure the safety chains were intervening and su-perceding causes of the accident, precluding liability on the part of the State”.
In the instant case, the trial court found no negligence on the part of Billedeaux or Phail. Unlike Hessifer, the hitch on Phail’s boat trailer fit properly over the ball on the pickup truck and the latch was not shown to be defective. The evidence at trial established that the ball’s diameter was 1.962 inches and the Valley hitch was two inches. There was testimony that, although it was a tight fit over the ball, it was within tolerable limits. Additionally, the record reflects that the hitch was properly locked onto the ball by a latch which was further secured by a bolt placed through the latch. The evidence confirms that the hitch was examined by several persons after the accident and found to be in proper working condition and without defect. Immediately after the accident, the hitch was found to be still in the latched position with the bolt through it.
Although the court in Hessifer also concluded that the failure to use safety chains constituted negligence on Williamson’s part, that finding was supported by the evidence. In Hessifer, the testimony of an expert in mechanical engineering was to the effect that had there been safety chains on the trailer, this would have prevented complete disengagement of the trailer from the truck. There was no expert testimony in the instant case to indicate that had safety chains been utilized, it would have prevented the boat and trailer from veering into the path of Geisler’s vehicle. In fact, there was lay testimony which indicated that safety chains possibly would have caused Billedeaux’s truck to swerve and collide with Geisler’s vehicle. In any event, there was no evidence presented in this case to support a finding that the failure to use safety chains constituted negligence on the part of Billedeaux and/or Phail. We will discuss this matter further in connection with DOTD’s second assignment of error.
Another factor which distinguishes Hes-sifer from the instant case is the size of the “bump” involved in the two cases. In Hes-sifer, the bump consisted of a band of asphalt, eighteen feet in length, which was three to three and one-half inches high and rose at an angle of about 45° from the approach pavement to the highway pave *433 ment. In this case, the “bump” was approximately 31 feet long and rose to a height of almost seven inches. Duaine T. Evans, an expert in the field of traffic engineering and safety described the road condition as being “... more like a ramp.” He further stated, “[i]t’s a gradually rising segment of highway that connects a low section to a higher section of the highway. And a vehicle traveling over that, if it has enough speed, the wheels will actually become airborne for some distance ...” Evans summarized his findings as follows:
“I concluded that this slope would have a ramp-like effect and the wheels of a vehicle, particularly a vehicle like a pickup truck that suspension is rather stiff, they would be off the pavement for roughly 3.8 feet, and this would cause a severe strain or stress on a trailer hitch. When they came back down to the ground, pulled it down on the ground, that would cause a jolt on that hitch. And then when the trailer wheels did the same thing, following, it would cause another jolt. This would be a strain on that trailer hitch probably beyond the normal design forces that would be allowed. And in my opinion, that’s what caused it to come unhitched. That’s what caused it to separate.”
Although DOTD presented its own experts who testified that the hump did not create a dangerous highway condition, the trail court concluded otherwise, apparently relying on the testimony of Evans. We find no error in this conclusion.
In his written reasons for judgment, the trial judge described the “hump” in the highway as follows:
“... While the term ‘hump’ is being used, it may not adequately describe the object. A profile of the hump shows that it was approximately thirty (30) feet long. Starting at its southern end its elevation was zero and proceeding north the elevation increased to .58 feet at its northern most point. This is a height of 6.96 inches. One witness testified that a vehicle would become airborne at the end of the hump. The majority of the witnesses testified that vehicles would be jolted at the end of the hump.”
The trial court concluded that the evidence established the existence of a significant and dangerous ramp-like hump at the point where the trailer became unhitched from the truck. The trial court therefore found DOTD strictly liable under La.C.C. art. 2317 for the death of Geisler.
A claimant is entitled to establish liability pursuant to the strict liability provision of Article 2317 only if he can prove that (1) the “thing” which caused the injury was under the “care, custody and control” of the defendant; (2) the “thing” was defective in that it posed a condition creating an unreasonable risk of harm; and, (3) the defective “thing” caused the injury complained of. See Loescher v. Parr, 324 So.2d 441 (La.1975); Jones v. City of Baton Rouge, etc., 388 So.2d 737 (La.1980); Toussant v. Guice, 414 So.2d 850 (La.App. 4th Cir.1982).
When one’s basis for recovery lies in strict liability rather than in negligence, the plaintiff is relieved of proving knowledge, constructive or otherwise, of the hazardous condition or defect. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982). In this case, DOTD admitted that it was aware of the condition of the highway but did not find that it was of such irregularity as to warrant corrective measures. Big Lake Road is a state highway in the custody and control of DOTD. Thus, our review is limited to a determination of whether the hump on Big Lake Road created an unreasonable risk of harm to motorists.
Aside from the size of the hump and its ramp-like effect, the record reflects that the existence of the hump was not apparent to oncoming vehicles not already aware of its existence. Thus, motorists were unable to adjust their speed in time to compensate for the hump. The general rule is that a motorist using the highway has a right to presume that the highway is safe for usual and ordinary traffic, and he is not required to anticipate danger of which he has not been warned. Craft v. Caldwell *434 Parish Police Jury, 455 So.2d 1226 (La.App. 2d Cir.1984).
After carefully reviewing the record, we have no difficulty in concluding that the trial court did not err in determining that the nearly seven inch, ramp-like, hump in the highway constitutes a defect within the intendment of La.C.C. art. 2317 and that such defect caused the accident.
COMPARATIVE NEGLIGENCE
DOTD asserts on appeal that if we find that the trial court properly found DOTD to be negligent, then we should also find that Billedeaux and/or Phail were also negligent. We find no merit in this argument.
As stated earlier, the evidence in the record establishes that the trailer hitch was without defect, properly attached to the truck and securely latched. Also Bille-deaux was traveling at 40 mph, well within the speed limit on Big Lake Road. Thus, the only possible negligence attributable to Billedeaux and/or Phail would be their failure to use safety chains in attaching the trailer to the boat.
Our research has revealed only one Louisiana statute which mandates the use of safety chains. La.R.S. 32:384(D) provides:
“Every trailer and semi-trailer with a loaded gross weight capacity of up to six thousand pounds shall be equipped with safety chains. The safety chains shall be securely attached to the towing vehicle when the trailer or semi-trailer is in motion and shall be of sufficient strength to hold the trailer behind the towing vehicle in case the connection between the two vehicles detaches.”
We find the above statute inapplicable in the instant case for two reasons. First, Section D was not added to R.S. 32:384 until 1984 and thus, was clearly not in effect at the time of the accident. Secondly, the statute pertains to trailers “with a loaded gross weight capacity of up to six thousand pounds”. Although there was no evidence introduced at trial as to the capacity of Phail’s trailer, it does not appear from the photographs in evidence that the boat trailer had a weight capacity of up to six thousand pounds. The trailer was designed to carry pontoon boats which, by their very nature, would seemingly weigh far less than six thousand pounds. Thus, the failure to use safety chains in the instant case did not constitute a breach of a legislatively imposed duty by Billedeaux or Phail.
DOTD claims nonetheless that the absence of safety chains was an intervening and superceding cause of the accident, thus precluding liability on the part of DOTD. As stated earlier, there was no expert testimony presented at trial to support DOTD’s contention that had safety chains been used the accident would have been avoided. For us to so conclude would be pure supposition. We are unable to say, without any supporting evidence, that had Billedeaux used safety chains in securing the trailer to the truck the accident would have been avoided. Just as reasonable a hypothesis would be that had safety chains been utilized, they would have caused Bille-deaux to lose control causing the truck and trailer both to veer into the southbound lane of traffic. Speculation cannot serve as the basis for a finding of liability. Cases are decided upon the evidence presented at trial. We therefore find no error in the trial court's finding that Bille-deaux and Phail were not negligent.
DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. DOTD is cast with all costs of this appeal.
AFFIRMED.

. Also made defendants in the case and found to be negligent were the owner of the truck driven by Williamson; the seller of the trailer latch; and, the manufacturer of the trailer latch.