510 So.2d 700 (1987)
Deeanna Joan CHERAMIE, et al.
v.
Billy BRUNET, et al.
No. 86 CA 0932.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
Rehearing Denied July 20, 1987.
*701 James G. Derbes, Derbes & Derbes, and Ronald Rakosky, New Orleans, for Deeanna Joan Cheramie, et al.
Grady Weeks, Weeks & Stark, Houma, for State of La., Dept. of Transp. and Development.
Robert B. Butler, III, Schwab & Butler, Houma, for State Farm Mut. Auto. Ins. Co.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
This is a wrongful death and survival action arising from a collision between a vehicle driven by decedent and a boat trailer which had detached from the truck pulling it.

FACTUAL BACKGROUND
On August 7, 1982, Billy Brunet, Kirby Adams and Jade Blanchard, all of whom were then minors, decided to go water skiing using a boat and trailer owned by Billy's father. Since neither of the family vehicles were available to Billy, the boys decided to use a 1976 Ford pick-up truck owned by Kirby's father to pull the trailer. In preparation for their excursion, Kirby backed the truck up to the trailer and Jade placed the trailer coupler over the tow ball on the rear bumper. Billy then joined the others and finished attaching the trailer to the truck. He stated that he first placed a bolt through the coupler's safety latch and put a nut at the end of it, then wrapped the safety chains around the ball and coupler, hooking the S-shaped hooks on either end of the chain into links on the opposite side. Finally, he pulled up on the tongue of the trailer to check whether the connection was tight. It was revealed at trial that the safety chains were not properly attached to the trailer and that the coupler and tow ball were incompatible, the coupler being 2" and the tow ball being 1 7/8" in size.
In any event, with Billy driving, the boys proceeded north on Louisiana Highway 1 approximately a mile. As Billy slowed down to turn into a gas station, the boys felt a sharp jerk and were thrown forward. Looking to the rear, they saw that the trailer had become detached and its tongue had risen in the air. Within a few seconds, the trailer veered across the center line into the southbound lane, crashed through the windshield of an oncoming van and struck the driver, Carl LeBlanc, Sr., in the forehead. Mr. LeBlanc subsequently died from complications which developed during the treatment of his severe injuries. Three of Mr. LeBlanc's minor children, Carl, Jr., Toni and Shelley, were also in the van, but received only minor cuts and bruises.
The point at which the boys first became aware of the trailer's detachment was almost immediately after the truck had crossed a rut extending across most of the northbound lane of Highway 1. The deepest point of this rut was approximately 3 inches. Its width varied from approximately 3 inches to 7 3/16 inches, although it appears most probable that the portion of the rut over which the truck and trailer passed was closer to 3 inches in width than to 7 inches. A short distance south of this rut the truck had also crossed a "dip" six to ten feet long, where the highway had settled four to six inches below the rest of the roadway. Although there was testimony *702 that other ruts existed in this section of the highway, no specific details were given regarding them.

PROCEDURAL BACKGROUND
Deeanna Cheramie, widow of Carl LeBlanc, filed a wrongful death and survival action on behalf of herself and the minor children born of her marriage to decedent. She also filed personal injury claims on behalf of the three children present in the van at the time of the collision. Named as defendants were: Kirby Adams and his father, Wilbert Adams, their liability insurer, Louisiana Farm Bureau Insurance Company (Louisiana Farm Bureau); Billy Brunet and his father, Bobby Brunet, their liability insurer, State Farm Mutual Automobile Insurance Company (State Farm); and, the Louisiana Department of Transportation and Development (DOTD)[1]. Jade Blanchard, his father and their liability insurer were also named as defendants, but the claim against them was compromised and settled before trial.
A bifurcated trial was held as to the remaining defendants, with the trial court hearing the claim against DOTD and a jury hearing the claims against all other defendants. Following trial, the jury returned a special verdict in favor of plaintiffs finding Billy Brunet 34 percent negligent, Kirby Adams 22 percent negligent and DOTD 44 percent negligent. In response to special interrogatories, the jury found that although Jade Blanchard was at fault, his fault was not a legal cause of the plaintiffs' injuries. The jury awarded damages in favor of the various plaintiffs as follows:

Deeanna Cheramie, as administratrix of the estate of
Carl LeBlanc, Sr.
Pain and suffering .................. $10,000.00
Loss of income from date of accident
to death ............................ 2,000.00
Medical expenses .................... 40,137.15
Burial and funeral expenses ......... 2,926.45
Property damage to van .............. 2,350.00
 __________
 $57,413.60
Deeanna Cheramie
Loss of economic support from date
of death ........................... $40,000.00
Loss of love and affection ......... 10,000.00
 __________
 $50,000.00
Angelia LeBlanc
Loss of economic support from date
of death ............................ $10,000.00
Loss of love and affection .......... 20,000.00
 __________
 $30,000.00
Carl LeBlanc, Jr.
Loss of economic support from date
of death ............................. $12,000.00
Loss of love and affection ........... 20,000.00
Pain and suffering ................... 2,000.00
 __________
 $34,000.00
Toni LeBlanc
Loss of economic support from date
of death ............................ $14,000.00
Loss of love and affection .......... 20,000.00
Pain and suffering .................. 2,000.00
Medical expenses .................... 48.00
 __________
 $36,048.00
Shelley LeBlanc
Loss of economic support from date
of death ............................ $16,000.00
Loss of love and affection .......... 20,000.00
Pain and suffering .................. 2,000.00
 __________
 $38,000.00

After the jury returned its verdict, the trial court ruled that DOTD was also liable to plaintiffs and assessed its fault at 50 percent.
Subsequently, several motions for judgment notwithstanding the verdict (JNOV) were filed by defendants, complaining that the jury erred in finding that the "fault" of Jade Blanchard was not a legal cause of the plaintiffs' damages. Following a hearing on May 2, 1985, the court granted defendants' request for a JNOV. In accordance therewith, the jury verdict was amended to provide that Jade Blanchard's fault was a legal cause of plaintiffs' injuries. The percentages of fault attributable to each party were reassessed as follows: Jade Blanchard10 percent; Kirby Adams 15 percent; Billy Brunet25 percent; and, DOTD50 percent.
On July 12, 1985, written judgment was rendered in favor of plaintiffs against Billy Brunet, Kirby Adams, Louisiana Farm Bureau, State Farm and DOTD, in solido, in the amounts awarded by the jury, subject to a 10 percent reduction due to the plaintiffs' release of Jade Blanchard prior to trial. Additionally, even though the trial *703 court had earlier denied a motion for additur filed by plaintiffs, it nevertheless rendered judgment against DOTD alone for $30,000.00 (subject to a 50 percent reduction) in addition to the $10,000.00 awarded by the jury for the decedent's pain and suffering.
Louisiana Farm Bureau thereafter filed a motion to amend the judgment on the basis of several alleged errors in phraseology and calculation. Pursuant to this motion, an amended judgment was rendered on January 17, 1986. This judgment differed significantly from the original judgment in that rather than casting additional judgment against DOTD for decedent's pain and suffering in the amount of $30,000, subject to a reduction of 50 percent, the court ordered that there be judgment against DOTD in the amount of $15,000 for this item of damages.[2]
Louisiana Farm Bureau, State Farm, DOTD and plaintiffs each appealed. However, Louisiana Farm Bureau ultimately settled with and was released by plaintiffs, who reserved their rights against State Farm and DOTD. Accordingly, Louisiana Farm Bureau has not pursued its appeal, leaving only the appeals of State Farm, DOTD and plaintiffs before this court.

ISSUES
1. Does DOTD's duty to maintain reasonably safe highways include a duty to protect motorists against the risk created by another motorist's negligently attached trailer?
2. Whether the fault attributable to Jade Blanchard was a legal cause of the damages suffered by plaintiffs?
3. What is the proper apportionment of fault between the various tortfeasors?
4. Whether the amount awarded for decedent's pain and suffering was adequate?
5. Whether the amount awarded to decedent's children for loss of love and affection was adequate?
6. Whether the amount awarded to decedent's children for loss of economic support was adequate?

ISSUE ONE
DOTD's general duty to maintain state highways was explained by the Supreme Court in U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780, 785 (La. 1976) as follows:
The law is settled that the Department of Highways is not responsible for every accident which may occur on the state highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways. Wilkinson v. American Insurance Co., 311 So.2d 584 (La.App. 3d Cir.1975); Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3d Cir. 1975), writ refused 312 So.2d 340 (La. 1975); Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La. App. 3d Cir.1974), writ refused 303 So.2d 182 (La.1974). Generally, it is the duty of the Highway Department to construct and maintain the highways in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. Coleman v. Houp, 319 So.2d 831 (La.App. 3d Cir.1975).
(Emphasis added).
Even when the breach of a legal duty is a cause-in-fact of harm, legal liability will not be imposed unless the duty breached was designed to protect the particular victim who was injured from the particular type of harm he suffered. See LeJeune v. Allstate Ins. Co., 365 So.2d 471, 477 (La.1978); Malone, Ruminations on Cause-In-Fact, 9 Stan.L.Rev. 60, 73 (1956). Thus, before liability can be imposed, it must be determined under a duty/risk analysis that DOTD had a duty to protect motorists using state highways from accidents of the type which occurred in this case. This issue has previously been decided in Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir.), writ denied, *704 420 So.2d 982 (La.1982), a case factually similar to the present one. In Hessifer, a trailer negligently attached to a truck with a defective latch and no safety chains detached when the truck passed over a bump on the highway. The trailer crossed the centerline and struck plaintiff's vehicle head-on. This court held that DOTD was not liable for the plaintiff's injuries because it was not within the scope of DOTD's duty to "protect against harm which would not have resulted but for the grossly negligent operation of the truck and trailer." Id. at 373. The evidence in the present case clearly establishes that the accident in question would not have occurred if the trailer coupler and tow ball had been compatible and the safety chains properly attached. The scope of DOTD's duty to maintain state highways simply does not include the risk of injury caused by the gross negligence of a third-party motorist in operating a truck and trailer. Hessifer, supra. Accordingly, the portion of the trial court's judgment holding DOTD liable for the plaintiffs' damages is reversed.

ISSUE TWO
Plaintiffs, who settled with and released Jade Blanchard prior to trial, argue the trial court erred in granting a judgment notwithstanding the verdict (JNOV) finding Jade guilty of fault which was a legal cause of their damages.
A JNOV should be granted by a trial court only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Stafford v. Unsell, 492 So.2d 94, 97 (La. App. 1st Cir.1986). The applicable standard upon appellate review is whether the trial court's findings in rendering the JNOV were manifestly erroneous. Id.
There is no dispute that Jade Blanchard was an active participant in the chain of events leading to the accident in question. He voluntarily took part in attaching the trailer to the truck without checking whether the coupler and ball were compatible. Accordingly, there is no manifest error in the trial court's conclusion that Jade was guilty of fault which was a legal cause of the plaintiffs' damages.

ISSUE THREE
Since we have reversed the portion of the trial court judgment decreeing DOTD to be guilty of 50 percent fault, it is necessary that there be a reapportionment of fault between the remaining tortfeasors. Since the complete record is before this Court, we will, in the interest of judicial economy, make this determination, rather than remanding this case to the trial court. Efferson v. State, Through Dept. of T. & Dev., 463 So.2d 1342, 1352 (La.App. 1st Cir.1984), writ denied, 465 So.2d 722 (La.1985). As previously stated, the record reveals that the trial judge found DOTD was 50 percent at fault, while the nonbinding finding of the jury was that DOTD was 44 percent at fault. Although nonbinding, the jury's erroneous finding of liability for DOTD has interdicted its factual findings on the percentage of fault attributable to the other parties. Accordingly, we must make an independent review of the evidence in reapportioning fault among the remaining tortfeasors. See Suhor v. Gusse, 388 So.2d 755 (La.1980); Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
In assigning percentages of fault attributable to each tortfeasor, a court should consider both the nature of each party's conduct and the extent of the relation between that conduct and the damages suffered. Watson v. State Farm Fire And Cas. Ins. Co., 469 So.2d 967, 974 (La. 1985). Factors which may influence this determination include:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Id. at 974.
*705 In the present case, Billy and Kirby were each at fault for authorizing the use of the trailer and truck, respectively, without determining whether they were compatible for use together. However, since Billy was also responsible for improperly attaching the trailer's safety chains, his fault was greater than Kirby's. The evidence at trial showed that the proper method of attaching the chains was to criss-cross them to prevent sideward oscillation, and then to hook the ends into the holes on the bumper on either side of the tow ball. Billy did not even attempt to hook up the chains in this manner. He testified that he assumed the hooks would not fit into the holes on the Adams' truck, because they did not fit into the holes on his father's truck. Finally, the fault Jade was responsible for because of his role in attaching the truck and trailer was obviously much less than that of the other two boys.
Accordingly, after carefully reviewing the record and applying the guidelines stated above, we assess 60 percent fault to Billy, 30 percent to Kirby and 10 percent to Jade.

ISSUE FOUR
Plaintiffs argue that the amount of damages awarded for Mr. LeBlanc's pain and suffering was grossly inadequate. The jury awarded $10,000.00 for this item of damages. In its amended judgment, the trial court awarded only $15,000.00 in addition to the award made by the jury, making a total award of $25,000.00 for this item of damages. It is this award we will now review.
In reviewing a damage award, the question this court must answer is not whether we believe a different award would have been more appropriate, but whether the award made by the trier-of-fact can reasonably be supported by the record. Carter v. Bd. of Sup'rs of Louisiana St. Univ., 459 So.2d 1263 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985). A damage award may be disturbed on appeal, only when the record clearly reveals an abuse of the great discretion accorded the trier-of-fact in making the award. Reck v. Stevens, 373 So.2d 498 (La.1979). Upon finding that an award is so inadequate as to constitute an abuse of discretion, an appellate court can then raise the award only to the lowest amount which the trier-of-fact could reasonably have granted. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In the present case, Mr. LeBlanc sustained multiple injuries, including a compression fracture of the frontal cervical vertebra, a distal fracture of the left radius and scaphoid bone and numerous abrasions. By far the most serious of his injuries, however, was an open frontal skull fracture, which exposed the cranial contents.
Mr. LeBlanc remained hospitalized at Charity Hospital in New Orleans from the date of the accident until his death on October 7, 1982, a period of sixty-two days. The actual cause of his death was overwhelming sepsis secondary to intra-abdominal infection and cardiorespiratory arrest. The medical evidence establishes that this condition, as well as the other problems Mr. LeBlanc experienced during his hospitalization, developed as complications incidental to his original injuries from the accident.
During his hospitalization, Mr. LeBlanc underwent surgery on four occasions. The numerous procedures performed included a debridement of the frontal lobes, a central frontal lobectomy, an exploratory laparotomy, a hemigastrectomy, a tracheotomy and a colostomy. At various times, it was necessary for him to have a respirator, intravenous and arterial lines, a nasogastric tube, a catheter and other equipment to facilitate drainage of the abdominal cavity. The attachment of these various items of equipment was obviously uncomfortable and, in fact, Mr. LeBlanc repeatedly tried to remove them.
Although Mr. LeBlanc was not fully conscious throughout his hospitalization, he was conscious at times. Mrs. Cheramie testified that after 3-4 weeks he became increasingly aware of his surroundings and started to respond, and after 5-6 weeks regained full consciousness. Dr. David *706 Herf, who treated Mr. LeBlanc for approximately two weeks beginning September 2, testified Mr. LeBlanc was conscious approximately 80 percent of the time when he saw him.
Mr. LeBlanc was unable to speak following the accident but, according to several witnesses, was able to show emotion by facial expressions. For instance, Mr. LeBlanc recognized and responded to the presence of his relatives by smiling. Also, Mrs. Cheramie testified that he became upset and cried whenever she mentioned the children, indicating that, despite his brain injuries, he was capable of experiencing mental anguish.
Considering the nature, extent and duration of Mr. LeBlanc's injuries, as well as the extensive treatment and surgical procedures he had to endure, we conclude an award of $25,000.00 for his pain and suffering is a clear abuse of the trier-of-fact's discretion. We therefore raise the award for Mr. LeBlanc's pain and suffering to $100,000.00, the lowest amount which reasonably could have been granted. Further, we note there is no basis for reducing this award by 50 percent as decreed in the original judgment of the trial court, or for imposing it upon one tortfeasor only. However, the judgment should be reduced by 10 percent due to the pretrial release of a tortfeasor found at trial to be guilty of 10 percent fault.

ISSUE FIVE
Plaintiffs argue that an award of $20,000.00 was inadequate to compensate decedent's children for the loss of his love and affection.
At the time of the accident, Mr. LeBlanc was not living in the same house as his children. He and Ms. Cheramie were physically, although not legally, separated at the time. Mr. LeBlanc had a normal relationship with his children, spending time with and taking them out to different places. The children occasionally stayed with him overnight. Mr. LeBlanc also took care of the children during the three days per week that Ms. Cheramie worked.
After reviewing all of the circumstances present, we find that, although definitely on the low side, the awards made were not so low as to constitute a manifest abuse of discretion. See Raymond Through Raymond v. Deaton, 423 So.2d 724, 729 (La. App. 1st Cir.1982).

ISSUE SIX
Plaintiffs argue the jury erred by not awarding damages for loss of support for the period between decedent's death and the date of trial. The record does not support this claim. The special interrogatories returned by the jury specifically provided that the award for loss of support was "from the date of Carl LeBlanc's death and into the future". This argument is without merit.
Plaintiffs also argue the jury erred in basing their award for loss of economic support on decedent's net rather than his gross income. We note initially that although this court has previously held awards for lost wages should be based on gross rather than net income, it is not settled whether the same is also true of awards for loss of support. However, it is unnecessary to reach this issue, since contrary to plaintiffs' assertions, it is not clear that the jury in this case utilized decedent's net income in setting this award.
Plaintiffs and defendants each presented an economist who testified as to the plaintiffs' loss of support. Both economists were thoroughly examined and cross-examined, and made numerous calculations of loss of support based on various estimates of the amount of income decedent would have earned, the amount of support he would have provided to his children and the duration of this support. Plaintiffs' economist based his estimates on decedent's estimated gross income, while defendants' economist used estimates of net income. There was a wide variance in these estimates, both between the estimates of the two economists and among each economist's own estimates, based on different sets of facts.
Both economists made estimates which the jury could reasonably have accepted *707 and which support the awards made. While these particular estimates were among the lowest made, there was evidence in the record which would have justified the jury in accepting them. At the time he was injured, Mr. LeBlanc was employed at a fish market working four days a week, eight to ten hours per day, earning $5.00 per hour. Ms. Cheramie stated that Mr. LeBlanc customarily gave her $100.00 to $150.00 per week for the children's support. However, Mr. LeBlanc's income for the month immediately prior to the accident was only $555.00. For the three years prior to the accident, his annual income was $9,678.44, $6,343.06 and $20,759.06, respectively. His 1982 earnings through the date of the accident were $1,314.00.
The trier-of-fact is accorded much discretion in determining damages, particularly when, as here, the facts preclude a precise computation of damages. French Jordan, Inc. v. Oilfield Sales & Serv., 439 So.2d 523 (La.App. 1st Cir.1983). After carefully examining the evidence presented, we find the awards made by the jury are reasonably supported by the record.

CONCLUSION
The judgment of the trial court is reversed insofar as it held DOTD liable for any damages to plaintiffs. Further, the trial court's judgment is amended to provide for a reapportionment of fault as follows: 60 percent to Billy Brunet; 30 percent to Kirby Adams; and 10 percent to Jade Blanchard. The judgment is also amended to raise the damages awarded for decedent's pain and suffering to $100,000.00. The judgment is affirmed in all other respects. Plaintiffs are to pay one-third and State Farm two-thirds of the court costs.
REVERSED IN PART; AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Although several other parties also were named as defendants, it is not necessary to list them herein since they were dismissed from this suit prior to trial and did not file appeals.
[2] There were also a number of other changes made in the amended judgment, but they need not be discussed herein since these changes are not pertinent to the issues raised in this appeal.