300 So.2d 579 (1974)
Harold LABORDE et ux., Plaintiffs-Appellees,
v.
LOUISIANA DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 4655.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
Rehearing Denied October 10, 1974.
Writ Refused November 22, 1974.
*580 Jonathan C. Harris, Baton Rouge, for defendant-appellant.
E. M. Nichols, Lake Charles, for plaintiffs-appellees.
Before HOOD, MILLER and DOMENGEAUX, JJ.
HOOD, Judge.
This is a suit for damages instituted by Mr. and Mrs. Harold Laborde against the *581 Louisiana Department of Highways, arising out of a motor vehicle accident allegedly caused by a defect in a state highway on which plaintiffs were traveling. The trial court rendered judgment in favor of plaintiffs, and defendant appealed. We reverse.
The principal issues presented are: (1) Did a potentially dangerous defect exist on the highway? (2) Was that defect a proximate cause of the accident? (3) Did defendant have actual or constructive knowledge of the hazardous condition? (4) Was the driver of plaintiffs' automobile negligent?
The accident occurred about 6:10 P.M., during daylight hours, on October 9, 1970, on Louisiana Highway 111, in Vernon Parish. The highway at that point was a two-lane, blacktopped thoroughfare, about 18 feet and six inches wide. The weather was clear and visibility was good at that time.
Mrs. Laborde was driving a community owned 1963 Buick automobile west on the above highway, and the automobile was towing a relatively large community-owned travel trailer or house trailer which had a separate braking system. Mr. Laborde was asleep on the front seat of the car. As Mrs. Laborde rounded a slight curve to her left, while driving at a speed of 25 or 30 miles per hour, the right front wheel of her car ran off the north edge of the blacktopped portion of the road. She then lost control of her car, and the trailer jackknifed and eventually turned over on the automobile. No personal injuries were sustained, but plaintiffs claim damages for the loss of the trailer and of the automobile.
Mrs. Laborde testified that she saw a hole on the right or north edge of the blacktopped slab when she was about five feet from it, that she was unable to avoid striking it, and that when that occurred the car "jerked," and as she was trying to control it the "trailer swung some way or other," and "all of a sudden" it turned over and came to rest "upside down on top of the car." She insists that all of the wheels of the automobile and trailer remained on the blacktopped slab from the moment her car struck the hole in the highway until the vehicles came to rest, and that the right wheels of those vehicles did not at any time travel on the shoulder of the highway. She estimated that both vehicles traveled a distance of less than 100 feet after her car struck the hole in the pavement, and that they came to rest within that distance from the defect in the highway.
Mrs. Laborde described the alleged defect in the highway as being a "hole" or a "depression" on the north edge of the blacktopped slab, "like the blacktop had just broken off." She judged it to be about 18 inches wide and at least one foot deep. She had traveled the road quite a few times before. She stated that she had been driving slow because she knew that the road was "not in good shape," that she had "passed places in the road" which gave her warning that she "might run into more ahead," and that she usually tried to keep her car in the center part of her half of the highway because she didn't want to get "too far to the edge." She said that the sun was shining brightly, and that she was "driving directly into the sun," indicating that her vision of the road ahead was affected by the sun. She reasoned that the highway defect which she described and which she photographed the next day was the one which her car had struck, because "it was right behind us there and of course I felt it when the car hit into this hole."
Mr. Laborde testified that he woke up when the car hit the bump, that he looked back and saw the trailer in a jackknifed position, that he told his wife not to apply the brakes, and that "about that time" the trailer fell onto the car. He estimated that the car and trailer came to rest at a point about 100 feet west of or beyond the alleged defect in the highway.
State Trooper E. R. Smart, who investigated the accident, testified that the tracks *582 of the vehicles showed that the right wheels of plaintiffs' automobile and the right wheels of their trailer ran off the north edge of the pavement at a point where there was a "long jagged edge off in the highway," that the right wheels of those vehicles continued to travel on the north shoulder of that road for a distance of 95 feet, and that the automobile was then turned to the left onto the blacktopped slab, and that both vehicles, the car and the trailer, then got back on the paved slab at that point. He stated that the automobile-trailer combination then traveled west on the pavement for a distance of 390 feet from the point where the automobile was driven back onto the blacktopped slab up to the point where the trailer overturned. The automobile and trailer thus traveled a distance of 485 feet after the car ran off the pavement and before the trailer overturned. There is no indication that the trailer swerved or skidded, or that the automobile was out of the driver's control, at any time while it traveled 95 feet with its right wheels on the shoulder. The tracks on the highway showed, however, that the trailer began swerving after the vehicles got back on the paved portion of the highway, and that it continued to swerve until it overturned. The plaintiffs apparently do not question the measurements made by the State Trooper, since Mr. Laborde admits that he was present at the time of the investigation and that he observed the trooper making these measurements.
The testimony of two officials of the State Highway Department established that an average of 809 vehicles per day regularly travel over the part of the highway where this accident occurred. No accidents have ever occurred at that site, and no complaints have ever been made as to the condition of the road there. The maintenance supervisor for the Highway Department in that area checks the highway for defects every ten days, and he has never noticed a defect in the highway in the area where this accident occurred. No one has ever informed him or anyone in his office that the highway was defective there. He testified that a crew would have been dispatched immediately to investigate and to make repairs if information had been received at any time as to a defect or a hazardous condition of the highway. No repairs were made to this part of the highway until sometime in March, 1971, approximately five months after this accident occurred, when routine repair work was done, including an evening up of the edges of the highways. The highway officials testified that although the edges of the blacktopped slab were not kept absolutely even, they attempt to maintain enough regularity so that there will not be a variance of more than from two to four inches in the width of a lane on the highway, and they endeavor to see that neither lane is ever reduced to a width of less than nine feet.
Mrs. Laborde took photographs of the site of the accident on the day after it occurred. These photographs show that the north edge of the blacktopped slab is somewhat irregular all along that part of the highway. She points out a particular indentation in the north edge of the slab, shown on the photographs, which she says is the "hole" which the right front wheel of her automobile struck at the time the accident occurred. The pictures show an indentation in the north edge of the slab which runs along that edge a distance of about 18 to 36 inches. This indentation or irregularity appears to reduce by a few inches the width of the north lane of traffic at that particular point, but the photographs convince us that the lane was not reduced in width nearly as much as plaintiffs contend. We are unable to judge from the photographs the depth of this particular indentation or depression in the edge of the highway, but they indicate to us that it was not a foot deep, as stated by plaintiffs. The drop off from the blacktopped surface to the shoulder appears to be the same at the indicated site as it does all along the shoulder. Also, if the front *583 wheel of plaintiffs' car dropped into a hole that deep, we think the axles or other parts of the automobile would have struck the pavement and would have left some marks on it. There were no marks on the blacktopped slab to show that any such thing occurred.
The trial judge did not find that the irregularity pointed out by plaintiffs extended as much as 18 inches into the north lane of traffic. As we understand his reasons for judgment, he concluded that defendant was negligent in allowing the highway to become "more than four inches short" of its intended 18 foot width. In our opinion, the record does not show that the blacktopped portion of the highway was less than 18 feet wide at any point, including the area in which this accident occurred. Mrs. Laborde failed to properly negotiate the left turn and ran off the blacktopped portion of the highway. She lost control of her vehicle and its tow when she prematurely returned to the hardsurfaced highway without reducing her speed and while still in the left turn at a distance of about 95 feet from the point where she ran onto the shoulder. She did not apply the separate braking system on the trailer while the vehicles were partially on the shoulder and under control and when the trailer later fishtailed and jackknifed. There remained ample room in the north lane of traffic for vehicles to travel in that lane, without crossing the center line and without running off the north edge of the pavement. There were no other vehicles on the highway, either ahead of or behind Mrs. Laborde, at the time this accident occurred.
The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir. 1963); Mistich v. Matthaei, 277 So.2d 239 (La.App. 4 Cir. 1973); St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964).
In the instant suit we have concluded that the road condition complained of by plaintiffs did not constitute a potentially dangerous defect in the highway. The "hole" or indentation pointed out by plaintiffs was not patently or obviously dangerous to a reasonably careful and ordinarily prudent driver. It was easily observable to a motorist on the highway a considerable distance before he reached that point. The Department of Highways thus violated no duty to plaintiffs or to anyone else in failing to repair or correct that alleged irregularity in the edge of the pavement.
We conclude that the irregularity or indentation in the north edge of the pavement at the point where plaintiffs' automobile left the blacktopped slab was not a proximate cause of the accident. Plaintiffs' automobile and trailer traveled along the highway, with the right wheels of both vehicles on the north shoulder, for a distance of 95 feet, and during that time the driver apparently maintained control of those vehicles. The trailer did not begin to swerve until after the automobile was turned back onto the pavement. The accident would have been avoided, we think, if Mrs. Laborde had properly negotiated the left turn. The indentation on the north side of the road was not sufficient to cause her to leave the hardsurfaced area. Indeed, she testified that she never drove off the hardsurfaced area. After driving onto *584 the shoulder, she failed to reduce the speed of her automobile before she attempted to turn back onto the hardsurfaced portion of the highway. Her negligence in failing to properly negotiate the curve and to maintain adequate control of the automobile and trailer as she attempted to turn back on the highway thus was the sole proximate cause of the accident. We find no causal connection between the highway defect of which plaintiffs complain and the accident.
Our conclusion is that the trial judge erred in holding that the defendant was liable for the damages sustained by plaintiffs as a result of this accident. We base that conclusion on our finding that the highway condition complained of by plaintiffs was not potentially dangerous to a reasonably careful and ordinarily prudent driver, and that the alleged defect was not a proximate cause of the accident.
Having concluded that the defendant is not liable for the reasons hereinabove assigned, it is unnecessary for us to consider the additional question of whether the defendant had actual or constructive knowledge of the alleged defect.
For the reasons assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant and against plaintiffs, rejecting plaintiffs' demands at their costs. The costs of this appeal are assessed to plaintiff-appellees.
Reversed.
DOMENGEAUX, J., dissents and assigns reason.
DOMENGEAUX, Judge (dissenting).
The majority opinion, in reversing the factual conclusions of the trial judge, concludes that a potentially dangerous defect did not exist in the highway in question, nor did the irregularity cause the accident, and that the proximate cause was the negligence of the plaintiff in failing to maintain control of the automobile and trailer. I respectfully disagree.
As pointed out by both the testimony of Mr. and Mrs. Laborde as well as the investigating officer, the irregular indentation, hole, or "drop off" on the north edge of the highway extended as much as 18 inches into the highway surface. In addition I personally think the photographs substantiated this testimony. Although we cannot ascertain how deep the drop off was I can clearly foresee the probability of the accident occurring herein if the plaintiff hit this indentation. This latter fact is not really disputed by any testimony. The cause of the accident (whether the vehicles traveled down the shoulder for some distance and then returned or not) is the same, i. e. the plaintiff lost control after hitting the "drop off", did not put on her brakes for fear of jack-knifing, and subsequently the trailer fishtailed and overturned. If she had not hit the indentation the accident would not have accurred.
The trial judge found the cause of the accident to be the failure of the Department of Highways to properly maintain the outer edges of the highway in the vicinity of the accident. He further found constructive and actual notice on their part of the poor condition of the roadway edges. This is testified to by the maintenance superintendent of the Department in this area who stated routine maintenance was done on the road edges because of frequent breaking. He further found that the plaintiff, Mrs. Laborde, was not negligent in failing to see the indentation or hole or in the way she attempted to handle the car and trailer after she struck the "drop off". Considering all of the facts and circumstances, I concur in this finding. Certainly, there is no manifest error.
An automobile operator has the right to rely upon the fact that the highway surface is presumed to be safe to drive upon. The plaintiff was not driving at an excessive rate of speed under the circumstances. The plaintiff did not simply negligently run off the edge of the road onto the shoulder. She instead hit the "drop off" or indentation which very evidently extends *585 a good distance into the traveled roadway. These roads in this area are knowingly very narrow, frequently used, and should be maintained accordingly.
I respectfully dissent, and feel that the judgment of the trial court should be affirmed.