410 So.2d 1265 (1982)
Mark SILER, Plaintiff-Appellant,
v.
Robert GUILLOTTE, Allstate Insurance Company, Louisiana Department of Transportation, and Pearson Construction Company, Defendants-Appellees.
No. 8584.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
Rehearing Denied March 23, 1982.
*1266 Corne & Block, Louis M. Corne, and Fruge & DeJean, Kenneth W. DeJean, Lafayette, for plaintiff-appellant.
Voorhies & Labbe, D. Mark Bienvenu, Lafayette, John W. King, Baton Rouge, for defendants-appellees.
Before GUIDRY, SWIFT and STOKER, JJ.
GUIDRY, Judge.
This case is one of two tort actions based upon common facts which were consolidated for trial in the interest of judicial expediency. The cases remain consolidated on appeal and we this day render a separate decision in the companion matter entitled Allen Chevalier v. Robert Guillotte, et al., 410 So.2d 1271.
Plaintiffs, Mark Siler and Allen Chevalier, filed separate tort actions against defendants, Robert Guillotte, his insurer, Allstate Insurance Company (hereafter Allstate), Pearson Construction Company (hereafter Pearson), and the State of Louisiana, through the Department of Transportation and Development (hereafter DOTD), for damages resulting from an automobile-truck collision occurring at the intersectional interchanges of I-10 West and Highway 167. Guillotte and his insurer filed answer denying any responsibility for the accident and in the alternative alleging contributory negligence on the part of plaintiffs. By third party demand Guillotte and his insurer sought indemnification and/or contribution from Pearson and DOTD. Guillotte's demand for indemnification and/or contribution was based on his contention that traffic control devices in the vicinity of the accident were inadequate to warn motorists of abnormal, dangerous traffic conditions existing in that section of the highway. Third party demands for indemnification and/or contribution were also filed by Pearson against DOTD and DOTD against Guillotte, his insurer, and Pearson and their insurer, American Fidelity Fire Insurance Company.
On August 25, 1980, a partial judgment of dismissal was rendered by the trial court dismissing plaintiffs' suits against Guillotte and his insurer due to a settlement reached by the aforesaid parties. However, the plaintiffs, Siler and Chevalier, reserved all rights against Pearson and DOTD and agreed to assume responsibility, if any, for any judgment rendered against Guillotte and Allstate pursuant to DOTD's third party demand. Plaintiffs' suit against Pearson was tried to a jury which concluded that Robert Guillotte was negligent and that his negligence was the sole cause of the accident. Plaintiffs' suits against DOTD were tried by the district judge who also concluded that the sole cause of the accident was Robert Guillotte's negligence. A judgment dismissing plaintiffs' claims against DOTD and Pearson was signed on January 21, 1980. Plaintiffs appeal.
On October 11, 1977, plaintiffs were involved in an automobile-truck collision in the Parish of Lafayette, Louisiana at the intersectional interchange of Louisiana Highway 167 and U. S. Interstate 10. Louisiana Highway 167 is a four lane separated highway running generally north and south. U. S. Interstate 10 is a four lane separated highway running generally east and west. The record reflects that defendant, Pearson, had contracted with DOTD to perform certain repairs on the I-10 overpass which crosses over Highway 167. The repair work necessitated the closing of the northbound two lanes of Highway 167 as it passes under the overpass. Northbound traffic on that roadway was re-routed from the northbound lanes of traffic to the easternmost southbound lane of Highway 167. This was accomplished by a cross over road some distance from the overpass where traffic in the northbound lanes would cross over to the easternmost southbound lane. In other words, for some distance north and south of the overpass Highway 167 accommodated two-way traffic.
*1267 On the aforesaid date, the Siler vehicle,[1] which was traveling north on Highway 167, entered the detour section, crossed over to the southbound lane in accordance with traffic directives, and entered the easternmost lane of the two-way traffic detour. After traveling a short distance, at a point almost to the overpass, while Siler was in his proper lane of travel, an automobile driven by Robert Guillotte crossed from the opposite lane of travel into plaintiffs' lane and crashed head-on into the Siler vehicle. Both plaintiffs sustained substantial injuries as a result of the collision.
The following issues are presented on appeal: (1) Did the trial court err in refusing to permit plaintiffs to present evidence regarding the non-negligence of Robert Guillotte; and, (2) Did the trial court and jury err in concluding that Robert Guillotte's negligence was the sole cause in fact of the accident.
Appellants' first specification of error is based upon a ruling by the trial court sustaining objection to evidence sought to be introduced by the plaintiffs tending to exonerate Robert Guillotte from negligence, which was a proximate cause of the accident. The objection was made prior to plaintiffs calling Robert Guillotte on direct examination. The basis for the defendants' objection and the court's ruling was that plaintiffs in their pleadings alleged that the accident was caused by the joint and concurrent negligence of all defendants and had thereby judicially confessed the negligence of Robert Guillotte.
A somewhat similar issue was presented in Wall v. American Employers Insurance Company, 386 So.2d 79 (La.1980). In Wall, our Supreme Court concluded that the Court of Appeal erred in determining, as a procedural matter, that plaintiffs were bound by their original and amended pleadings filed at the commencement of the litigation, before settlement with and release of two alleged tortfeasors, such that the judgment ultimately rendered against the unreleased tortfeasor entitled the remaining defendant to a reduction of that judgment. In reaching this conclusion, the Supreme Court stated:
".... Here plaintiffs settled with and released two of the three defendants well before trial. Aware of the release, defendant itself raised in its supplemental answer to the petition the issue of the negligence of the released co-defendants and prayed that if judgment be for the plaintiffs, the judgment be reduced because of the release of the two co-defendants. And while plaintiffs did not amend their original petition in which they alleged the joint and concurrent negligence of all defendants, plaintiffs did introduce without objection from defendant evidence of lack of fault on the part of the two released co-defendants.
In this case as in Hall [Hall v. Hartford Accident & Indemnity Co., 278 So.2d 795 (La.App. 4th Cir. 1973)] the issue of the co-defendants' fault or lack thereof was fully and completely litigated at trial. Defendant did not object to the introduction of the evidence of the released co-defendants' lack of fault; nor did it at or before trial contend that plaintiffs had judicially confessed the released co-defendants' negligence in their pleadings. Consequently defendant must be held to have consented to expansion of the pleadings by introduction of the evidence.3 Had defendant objected, showing his lack of express or implied consent, then the trial court could have allowed plaintiffs to amend their petition.4 An objection at that time would possibly have facilitated amendment of the petition and would have obviated this procedural problem.
We therefore conclude that plaintiffs are not bound by their allegations in the original petition, for the pleadings were amended by implied consent of the parties to charge exclusive fault on the part of the police jury. The Court of Appeal's reliance upon the allegations in plaintiffs' original petition was erroneous." (footnotes omitted).
*1268 Unlike Wall, the defendants in this case timely objected to the introduction of such evidence and plaintiffs did not seek to amend their pleadings pursuant to LSA-C. C.P. Article 1154 to alleged exclusive fault on the part of the remaining defendant.
The issue presented is close. However, we conclude that we need not categorically decide whether the trial court's ruling was in error. This is so because, even if erroneous, plaintiff suffered no prejudice as a result of this ruling. The record, in this case, reflects that the issue of Robert Guillotte's fault or lack thereof was fully and completely litigated at trial such that there is an adequate record for this court to review and make a determination on that issue.
We now address appellants' remaining specification of error. As stated, plaintiffs contend that the trial judge and the jury erred in concluding that Robert Guillotte's negligence was the sole cause in fact of plaintiffs' injuries. In this regard, plaintiffs allege that both Pearson and DOTD were negligent in failing to erect adequate warning signs and road markings advising Guillotte of the two-way traffic zone existing at the intersection of U.S. I-10 and Louisiana Highway 167, and that such negligence was the cause in fact of plaintiffs' damages.
At trial Guillotte testified that prior to the accident he had been at a local bar where he drank a few beers with three friends. Shortly thereafter, he and his friends left the bar in Guillotte's automobile. He stated that he drove via U. S. I-10 East to Breaux Bridge, Louisiana where he immediately turned around and began driving in a westerly direction on I-10 towards Lafayette. Guillotte testified that he exited I-10 West onto the ramp which intersects with Highway 167. At the end of the ramp, Guillotte proceeded south traveling in the so-called "merge lane" which runs parallel to the southbound lanes of Highway 167. Guillotte stated that he merged into the westernmost lane of 167 traveling south, and shortly thereafter, he maneuvered his automobile into the easternmost lane of traffic where he struck plaintiffs' vehicle. Guillotte testified that prior to the collision, he saw no warning signs or regulatory road markings advising him of the road construction ahead nor of the conversion of the two-lane southbound roadway to a two-way traffic situation.
Officer Kenneth Holleman, who investigated the accident for the Lafayette City Police, testified that he retraced Guillotte's path of travel just prior to the accident and noted the following warning signs and road markings: (1) Two (2) large "Construction Ahead" signs located on both the right and left sides of the 1-10 exit ramp; (2) Two (2) Two-way Traffic signs located on the right hand side at the bottom of the exit ramp, the first sign being immediately at the bottom of the ramp and the second situated approximately 75 to 100 feet further south; and, (3) Double broken yellow lines, one on each side of the single broken white line which divides the two lanes of traffic. Officer Holleman stated that during his investigation of the accident he detected the odor of marijuana emanating from the Guillotte vehicle. Upon closer observation, Holleman discovered the remains of two marijuana cigarettes in the vehicle's ashtray along with other marijuana residue. In addition, Holleman confiscated a plastic bag containing marijuana which he discovered when checking the vehicle's glove compartment for the automobile's registration papers. Margaret Oelkers, a passenger in the Guillotte vehicle at the time of the accident, testified that she observed Guillotte smoking a home-rolled cigarette prior to the accident and that Guillotte told her it was marijuana. In addition, Oelkers corroborated Guillotte's statement that he drank 2-3 beers at a local lounge prior to the accident.
Plaintiffs' expert witness, Dwayne Evans, a consulting engineer, opined that the area adjacent to the accident site was not adequately signed so as to advise oncoming motorists of the two-way traffic situation ahead. In this regard, Evans indicated that at the very minimum, there should have been more than two two-way traffic warning *1269 signs located at regular intervals along the roadway, and also, that there should have been a solid double yellow line advising motorists that passing vehicles on this particular stretch of highway was not allowed. In addition, Evans opined that motorists exiting the ramp onto Highway 167 would be looking to their left and northward to determine if they could merge with the southbound traffic, therefore, the two two-way traffic signs situated at the end of the ramp on the motorists' right hand side would be ineffective to warn motorists of the two-way traffic situation ahead. Also, Evans testified that double broken yellow lines are meaningless road markings and not provided for in the Manual on Uniform Traffic Control Devices which governs the placement of traffic control devices existing on our state's highways.
Irvin Deranger, State project engineer for the U.S. I-10-Louisiana Highway 167 construction project, testified that the project plans were prepared by the State and that he was in charge of DOTD personnel at the construction site. Deranger stated that all of the warning signs and road markings required by the plans were put in place properly by Pearson. In addition, Deranger testified that he and Larry Harry, a State traffic engineer, authorized the use of double broken yellow lines in the two-way traffic zone. In so doing, Deranger explained, both he and Harry concluded that passing in the construction zone should not be totally prohibited because there are times when traffic is minimal at this particular segment of highway. Thus, Deranger stated, under certain circumstances, passing should be permitted to aid the free flow of traffic. Deranger further testified that the first sign warning motorists of the two-way traffic zone ahead is visible to oncoming motorists while they are still on the ramp. In regard to the duties and responsibilities of Pearson, Deranger stated that Pearson was not in charge of designating what type of signs or road markings should be utilized, but rather, was merely in charge of seeing that such signs and road markings were placed in accordance with the State project plans.
Larry Harry testified at trial that the solid double yellow lines suggested for placement by the Manual on Uniform Traffic Control Devices were not mandatory and that the manual permits the exercise of professional engineering judgment, in determining what particular signs and markings are necessary in a specific situation. Harry's testimony essentially tracked that of Deranger. He stated that the reason no warning signs were placed on the left hand side of the roadway, as suggested by plaintiffs' expert witness, was that to situate signs in that position would not necessarily impart to motorists exiting the ramp that that particular warning was for them. Rather, motorists traveling south on Highway 167 would presume that the sign was meant for them which would serve no purpose as such motorists were already apprised of the two-way traffic situation by previous warning signs. Although Harry admitted that supplemental signs located on the left side of highways is permissible, he stated that in his professional judgment, he did not feel such supplemental signs were necessary in the present situation.
Defense expert witness, Neil E. Walton, a civil engineer, who is an expert in the fields of highway engineering and traffic and human factor engineering, stated that after reviewing the project plans and specifications, the accident report, and the testimony received at trial, it was his professional opinion that the warning signs and regulatory road markings existing at the time of the accident were adequate to warn the reasonably prudent motorist of the changed traffic situation encountered by oncoming motorists at the highway area under construction.
Finally, Rees Gideon, a State engineering aide 4, whose duties and responsibilities include inspecting all warning signs and road markings on a daily basis, testified that according to his daily diary sheets, all warning signs and road markings were in place and in good condition on the morning before and after the accident.
*1270 In Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3rd Cir. 1975), writ refused, 312 So.2d 340 (La.1975), our court set forth the duty owed by the Department of Highways to motorists traveling on Louisiana's roadways by stating:
"The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3 Cir. 1974); Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir. 1963); Mistich v. Matthaei, 277 So.2d 239 (La.App. 4 Cir. 1973); St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964)."
See also Desselle v. State, Department of Public Highways, 328 So.2d 389 (La.App. 3rd Cir. 1976). The principles above set forth apply as well during the course of construction or repair of highways. As stated in Brandon v. State, Through Department of Highways, 367 So.2d 137 (La. App. 2d Cir. 1979), writ denied, 369 So.2d 141 (La.1979), the Department's duty during the course of construction is usually discharged by the giving of adequate warning.
Our court in Von Cannon v. State, Department of Highways, 306 So.2d 437 (La. App. 3rd Cir. 1975), writ refused, 309 So.2d 681 (La.1975), in setting forth the duty owed by motorists traveling on our State's highways, stated:

"The driver of a motor vehicle has the duty to maintain a lookout and to see that which an ordinary reasonable motorist would have seen under the circumstances...."
After carefully reviewing the record, we conclude that neither the trial court nor the jury erred in concluding that Robert Guillotte was negligent in the operation of his motor vehicle and that such negligence was the sole cause in fact of the accident. See Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir. 1975). In so concluding, we find Guillotte's own testimony particularly noteworthy. He stated that he saw no warning signs or road markings of any kind prior to the accident. However, the record clearly establishes that several traffic control devices were in place at the time of the accident. Guillotte admitted that he had consumed some alcoholic beverages prior to the accident and the record reflects that Guillotte additionally smoked an undetermined quantity of marijuana before the collision. Presumably, the trial court and jury were influenced to some degree by Guillotte's ingestion of such intoxicants. The trial judge specifically noted in his oral reasons for judgment, and we assume that the jury also concluded, that Guillotte failed in his duty to maintain a proper lookout. The trial court and jury accepted the testimony of defense experts who stated that the warning signs and road markings existing in the vicinity of the accident were adequate to advise reasonably prudent motorists of the two-way traffic zone ahead. We find no error in these conclusions.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] On the date of the accident, Mark Siler, driving a 1968 GMC pickup truck, was enroute to Rayne, Louisiana, accompanied by Allen Chevalier, a guest passenger.