YELVERTON, Judge.
Linton Seaux, 35, was crabbing on a bridge on Louisiana 82 in Vermilion Parish on Saturday, May 12, 1984, at about 8:45 A.M. He was in the process of crossing the highway when, at a point about three-fourths across, he was hit by a 1981 Buick driven by Robert C. Domingue and insured by State Farm Mutual Automobile Insurance Company. Seaux sued Domingue and State Farm for his injuries.
A jury found both Seaux and Domingue negligent, attributing 58.8 percent of the blame to Seaux and 41.2 percent to Domingue. The jury found Seaux suffered damages totaling $210,000. A judgment was rendered accordingly, fixing Domingue’s liability to Seaux at $86,520, and State Farm’s policy liability in solido with Domingue at $50,000 of that amount. The defendants appeal raising four issues: (1) Was there sufficient evidence for the jury to return a verdict against Robert Domingue? (2) Was Robert Domingue at fault? (3) If so, to what degree? and (4) Were damages awarded improper or excessive?
The place where this accident happened is on a portion of State Highway 82 which is straight for miles across the marsh between Pecan Island and Cameron. On Saturdays in warm weather, bridges along this route are much-frequented by people fishing for crabs. Both the plaintiff and the defendant were well-acquainted with the area; Seaux lived nearby and had fished the bridge for many years, while Domingue drove the road frequently to visit his mother in Cameron Parish.
On the morning of the accident Seaux and members of his family had arrived in two separate vehicles, parking them along the side of the road near the bridge, and they had already set out and were minding their nets and lines. Seaux was standing on the north side of the bridge. Domingue was approaching the bridge from the east going west toward Cameron, his cruise control set at 55 m.p.h. He saw four people standing on the bridge. As Domingue approached the bridge, seeing the activity ahead, he steered toward the middle of the road. He testified that at some point approaching the bridge he touched his brakes and when his vehicle had slowed to about 45 m.p.h., at a point some 50 feet from the plaintiff, he saw the plaintiff turn and jog at an angle across the highway headed *538 south. His reaction was to apply his brakes and steer to the extreme left-hand side of the road. His right front headlight hit plaintiff at a point about two feet south of the center line. The physical evidence showed that the Domingue car left 10 feet of skid marks before the point of impact, and that it traveled another 30 feet before coming to a stop in the eastbound lane.
Seaux’s testimony was that before crossing the highway he looked to the left and saw a car 500 to 600 feet away, then looked to his right and saw a more distant vehicle, then back again to his left where he saw defendant’s car closing at about 400 feet. He thought he had time and started walking across. He got across the center line a few feet, heard people hollering, and looked up and to his left, and there was the car bearing down upon him.
The comparative fault doctrine of La.C.C. art. 2323 governs pedestrian cases. Turner v. New Orleans Public Service, Inc., 471 So.2d 709 (La.1985). The appellants contend that there was not sufficient evidence for the jury to return a verdict of fault against Domingue, and certainly not to the degree of 41.2 percent. We disagree. We have examined the evidence under the guidelines of Canter v. Koehring Co., 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), and we find no clear error in the jury’s finding that Domingue in this case was at fault or in the finding of the degree of that fault. There were questions of fact as to what happened. The jury obviously believed that Domingue, who was familiar with the area and who knew that it was populated on good-weather Saturdays by crab fishermen, and who admitted he saw parked vehicles and people when he was at least 300 feet away, failed to take appropriate action soon enough to be able to keep the risk of harm more closely in balance, knowing he was in a car and that there were pedestrians moving about on the bridge. He was still going 45 m.p.h. when he was 50 feet away from the point of impact. His speed was unquestionably a factor in the accident, both as to causation and fault. The risk of harm was affected adversely by his speed under the circumstances. The greater the risk of harm to others, the greater is the fault. Turner, supra. We cannot say that the jury was clearly wrong in finding Domingue at fault, or in assessing him with 41.2 percent of the fault.
Appellants complain generally that the result could have been different if the trial court had given all their requested charges. They specify only two instances: the failure to charge the sudden emergency doctrine, and the failure to charge the presumption applicable when a party does not call a material witness.
The failure to charge the sudden emergency doctrine was not error. This case was presented to the jury just a few weeks before Turner, supra, was decided. When the case was presented to the jury the controlling law on the subject of motorist-pedestrian accidents was Baumgartner v. State Farm Mutual Auto Insurance Co., 356 So.2d 400 (La.1978). In its charges to the jury the trial judge discussed, quoting directly from Baumgartner, the higher standard of care imposed upon the motorist than upon the pedestrian, and the lack of mutuality of risks created by the conduct of the motorist and the pedestrian. Among his instructions, however, was the precept that a motorist who exercises all reasonable care to protect a pedestrian, who nevertheless suffers injury, is not at fault. Although the trial court charged the jury based on the liability precepts of motorist-pedestrian tort law under Baumgartner, with remarkable foresight the trial court anticipated Turner, because it instructed the jury that it could take the plaintiff’s negligence into account and reduce his recovery accordingly. The Supreme Court in Turner made it clear that cases like Baumgartner would thereafter be governed by comparative fault, but there appears to have been no intent in Turner to change the rules announced in Baumgartner regarding the duty of a motorist and the duty of a pedestrian. It may be that the doctrine of sudden emergency has no place in automobile-pedestrian cases (perhaps the motorist’s duty extends to pre *539 venting a sudden emergency from ever happening), but we need not rest our decision on that academic question. Suffice to say, the rules of law as to the standard of care required of the motorist in the present case were adequately covered by the general charges given by the trial court regarding the duty of the motorist and the duty of the pedestrian. It was not error to refuse to charge sudden emergency.
Nor was it error to refuse to charge the effect of the presumption for failure to call a material witness. It is argued that there were two such witnesses, one an eyewitness and the other a medical doctor. The supposed eyewitness was either plaintiffs mother or his young brother, the record does not make clear which. There was testimony by two witnesses, plaintiff’s wife and his father, that plaintiffs mother was under the bridge when the accident happened. This testimony was not contradicted. There is only one mention in the record of the presence of the elder Seaux’s youngest son, and no indication by any witness that he may have seen the accident; he may have been under the bridge with his mother. The presumption upon which appellants rely applies only when there is a failure to call a witness who qualifies as one possessing knowledge of material facts, such as an eyewitness. Jolivette v. City of Lafayette, 408 So.2d 309 (La.App. 3rd Cir.1981). The failure to call a witness who does not possess such peculiar knowledge of the facts does not raise an adverse presumption. Morgan v. Matlack, Inc., 366 So.2d 1071 (La.App. 1st Cir.1979). Based upon our review of the record in this case, it does not appear that the trial court erred in concluding that there were no other eyewitnesses than those called, and that therefore this charge was not appropriate.
The other uncalled but (it is argued) knowledgeable witness was a Dr. Thomas Curtis, who plaintiff testified had treated him in April 1985 (one month before trial). The record discloses, however, that it was Dr. Bobert Morrow, an orthopedist, who was plaintiff’s primary treating physician from the time of the accident and still his treating physician at the time of the trial, and that Dr. Morrow had referred plaintiff to several other doctors for further specialized treatment during this time, the referral to Dr. Curtis being one such case. Dr. Curtis’s only involvement in the case was some corrective abdominal surgery done a month before trial, and this was not mentioned as an element of claimed damages. Moreover, the explanation of Dr. Curtis’s brief role in Seaux’s treatment was heard only by the judge, not by the jury. Dr. Curtis’s role as a treating physician in the case was so limited and insubstantial that the circumstances simply did not justify an adverse presumption for failure to call him. Liner v. Patrick, 421 So.2d 391 (La.App. 1st Cir.1982). We conclude that it was not error for the trial court to refuse to give this requested charge.
The final assignment of error has to do with the amount of damages. Appellants argue that the award of $210,000 was excessive and should be reduced by at least $50,000.
Seaux received extensive injuries including, as described by the treating physician at trial, “a laceration of the mesentery of the small bowel, a ruptured spleen, a laceration of the scalp, an open comminuted displace of the left tibia fibula fracture, a laceration over the lateral aspect of the right ankle with entry into the ankle joint, an open left knee, a laceration of the right posterior medial third of the calf, a tear of the right anterior cruciate ligament, a tear of the right lateral collateral ligament in the posterior lateral corner of the knee capsule, a tear of the left anterior cruciate ligament, a tear of the left medial collateral ligament, and bilateral lung infiltration.”
At the time of trial the plaintiff was still undergoing treatment, would have a permanent partial disability due to the laxity of the left knee, and probably would incur future medical expenses. The jury did not itemize the award, but there was evidence to support awards of pain and suffering, past and future medical expenses, disability and loss of future wages. From our examination of this record we are unable to say that this award represents a *540 clear abuse of the jury’s much discretion in the award of damages. Reck v. Stevens, 373 So.2d 498 (La.1979). We will not disturb the award.
For these reasons, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.