581 So.2d 732 (1991)
Wade J. LABIT, III, et al.,
v.
TANGIPAHOA PARISH COUNCIL.
Consolidated With
Emmanuel J. LABIT
v.
TANGIPAHOA PARISH and the State Through the Department of Transportation and Development.
Nos. CA 90 0442, CA 90 0443.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Rehearing Denied July 2, 1991.
Richard McShan, Greensburg, for plaintiff-appellant Wade Labit, III, et al.
Michael R. Guidry, Michael R. Guidry, Olden C. Toups, Jr., New Orleans, for plaintiff, Emmanuel J. Labit, appellant.
Steven B. Witman, Metairie, for defendant-appellant Tangipahoa Parish Council.
Clifton Speed, Amite, for defendant, Parish of Tangipahoa.
Suzanne R. Laguaite, Baton Rouge, for defendant, La. Dept. of Justice.
Before EDWARDS, WATKINS and LeBLANC, JJ.
*733 EDWARDS, Judge.
This is a wrongful death and survival action instituted by the five children[1] of the decedent, Wade Labit, Jr., against Tangipahoa Parish and the State of Louisiana through the Department of Transportation and Development (DOTD).[2]

FACTS
On the morning of January 5, 1988, the decedent Wade Labit, Jr., a 52 year old man was driving his Chevrolet pick-up truck in a northerly direction on Cooper Road, in Tangipahoa Parish. Apparently, and for reasons unknown, Labit's vehicle left its lane of travel, crossed the opposite lane of travel and continued over a bridge embankment and into the creek bed on the northwest side of the bridge. There were no eyewitnesses to the accident.
Labit had left his home at 9:30 p.m. the previous evening to work the 10 p.m. to 6 a.m. shift at a Jr. Food Mart in Hammond, and apparently, he was on his way home when the accident occurred. Labit's family members became concerned when he did not return; they alerted the police and a search was undertaken. Three days later, on January 8, 1988, Labit's vehicle was found lodged against the northwest side of the bridge bank off Cooper Road. Labit was found dead inside of the truck.
Dr. Vincent Cefalu, Tangipahoa Parish Coroner, performed a postmortem examination of Labit at the scene of the accident. His examination revealed that Labit had dislocated fractures of the tibia and fibula, a broken hip, and since he had bled a lot into the lower leg where the fracture was, the right leg was "about three to four times the size of the left leg." Most significantly, he found multiple fresh abrasions over Labit's knuckles. He determined that the abrasions indicated that Labit had survived the impact for some time, and apparently attempted to use his hands to get out of the wreckage. Cefalu testified that while the hip and leg injuries are "unbelievably painful," they were not the cause of Labit's death. Rather, he determined that the cause of Labit's death was either hypothermia, from extended exposure to freezing temperatures or hypotension from the blood loss he suffered.
The bridge was constructed in 1970; it is a "treated timber trestle" bridge made of wood, with an asphalt surface. At the time of the accident, the bridge lacked guardrails, and most of the bridge railings that were originally erected had been either knocked out or were decayed and required replacement. The records produced at trial contain inspection reports from inspections conducted in 1980, 1983, 1985 and 1987 by DOTD officials, wherein the lack of guardrails and decomposition of bridge railings were noted as "major defects" in the bridge which required immediate attention. Despite these repeated requests made pursuant to the DOTD inspections, the council neither erected the requisite guardrails nor replaced the bridge railings.
Furthermore, photographs introduced into evidence established that the lack of guardrails and extremely overgrown foliage and vegetation along the roadway made it almost impossible to ascertain the location of the bridge or the canal.
The evidence at trial also established that Labit's vehicle, after crossing the opposite lane of travel, left the roadway approximately 40-60 feet from the bridge and continued to travel off of the roadway until it impacted the bridge embankment. There was much conflicting testimony regarding the effect, if any, that the presence of guardrails could have had in preventing the accident. The testimony elicited regarding the reason for Labit's vehicle leaving its lane of travel was speculative, at best.
*734 The trial court found that the bridge was defective, that the council had actual notice of such defect, and that the council's failure to properly maintain the bridge caused Labit's death. The court also found that there was comparative fault on the part of the deceased and assigned 50% of the fault to Labit and 50% of the fault to the Tangipahoa Parish Council. A judgment was rendered awarding $35,000 for the survival action, $50,000 in wrongful death to each child, an additional $20,000 to the minor child for loss of support, and an award for funeral expenses, all subject to a reduction of 50% for the comparative negligence of Mr. Labit.
The Parish Council appeals, claiming that the trial court erred in finding it liable to the plaintiffs. The plaintiffs answered the appeal, urging that the trial court erred in finding Labit 50% at fault and also contending that the wrongful death award to each child should be increased to $80,000.
We find no error in the trial court's decision and affirm the judgment.

APPLICABLE LAW
The duty of the state or a public agency charged with the care of a highway is to keep the highways in a reasonably safe condition. Whether that duty has been breached depends on the particular facts and circumstances of each case. Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170 (La. 1986).
Plaintiffs allege that the Tangipahoa Parish Council is liable under theories of negligence (La.C.C. art. 2315) and strict liability (La.C.C. art. 2317). The distinction between recovery under these theories is that under strict liability, the plaintiff is relieved of proving that the owner or custodian of the thing which caused the damage knew or should have known of the risk involved. See Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982). Nevertheless, LSA-R.S. 9:2800 curtails the application of strict liability to government defendants by limiting liability to cases where the public entity has "actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so." LSA-R.S. 9:2800(C) defines constructive notice as "the existence of facts which infer actual knowledge."
In the instant case, the council had actual knowledge as early as 1980 (via the bridge inspection reports) that the lack of guardrails and the condition of the bridge railings were considered major defects. Therefore, the liability analysis is the same under La.C.C. art. 2315 or La.C.C. art. 2317.
After hearing all of the evidence, the trial court concluded that without question, the physical condition of the bridge was "deplorable," as was the condition of the roadway and shoulders. The trial court also concluded that had guardrails been provided, as required, they would have diverted Labit's vehicle and he would have survived. Moreover, in keeping with the coroner's testimony, the trial court noted that if Labit had been found reasonably soon after the accident, he would have survived the impact. After a thorough review of the record, we find no error. See Michel v. Ascension Parish Police Jury, 524 So.2d 1369 (La.App. 1st Cir.) cert. denied 530 So.2d 567 (La.1988).

COMPARATIVE FAULT
Under Louisiana's comparative fault principles, a plaintiff's recovery is reduced by the degree or percentage of fault attributed to him by the trier of fact. La.C.C. art. 2323. The trial court's finding as to a degree of fault under LSA-C.C. art. 2323 is a factual matter and should not be disturbed on appeal unless the record establishes that the finding was clearly wrong or an abuse of discretion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The evidence established that Labit's vehicle inexplicably left its lane of travel, crossed the opposite lane of travel and ran off the roadway approximately 40-60 feet before the bridge.
*735 We find an allocation of 50% fault to Labit in causing the accident was well within the trial court's discretion. In any event, there is no manifest error. See Hano v. Louisiana Department of Development and Transportation, 519 So.2d 796 (La.App. 1st Cir.1987) cert. denied, 523 So.2d 861 (La.1988).

QUANTUM
In answer, plaintiffs request an increase in the damage award to each child. The trial court has much discretion to assess damages based on the facts and circumstances of each case. We may not disturb a trial court's award unless the record clearly establishes an abuse of discretion. The trial court awarded each child $50,000 in wrongful death, plus an additional $20,000 to the minor child for loss of support. We have reviewed the record and the jurisprudence and find the award to be well within the discretion of the trial court. See Cheramie v. Brunet 510 So.2d 700 (La.App. 1st Cir.) cert. denied 513 So.2d 1209, 513 So.2d 1215 (La.1987).
Accordingly, the judgment of the trial court is affirmed in its entirety. Costs of this appeal, in the amount of $1,088.00 are assessed to appellants, the Tangipahoa Parish Council.
AFFIRMED.
LeBLANC, J., respectfully dissents. The record does not contain any evidence that a defect in the roadway and/or bridge caused the accident and the resulting injuries. Any attempt to fix percentage of fault is not only speculative, but amounts to guess work.
NOTES
[1] Two separate petitions were filed and the matters were consolidated. One of Labit's sons, Emmanuel J. Labit, filed his own action; the other petition named plaintiffs Wide J. Labit, III, Mary Labit Vinet, Rebecca Labit and Mary Pierce, on behalf of her minor son, Ashton Scott Labit.
[2] Prior to trial, the trial court granted summary judgment in favor of the State of Louisiana, dismissing plaintiff's cause of action as to it, on the grounds that the road on which the accident occurred is neither part of the state highway system nor maintained by the Department of Transportation and Development.